UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X

In Re DMCA Subpoena to Cloudflare, Inc.

            Case No. 7:25-mc-00555-KMK

            Honorable Kenneth M. Karas

----------------------------------------------------------------- X


**PETITIONER WATCH TOWER BIBLE AND TRACT SOCIETY OF
PENNSYLVANIA'S RESPONSE TO**

**CLOUDFLARE, INC.'S OPPOSITION TO PETITIONER WATCH TOWER BIBLE
AND TRACT SOCIETY OF PENNSYLVANIA'S**

**MOTION FOR AN ORDER TO SHOW CAUSE WHY
CLOUDFLARE, INC. SHOULD NOT BE HELD IN CONTEMPT**

## Table of Contents

INTRODUCTION ............................................................................................................. 3

STATEMENT OF FACTS ............................................................................................... 4

A.  Doe's Infringement of Watch Tower's Copyrights .............................................. 4

B.  Cloudflare Has a Pattern of Disregarding Legal Process from Watch Tower, Starting with DMCA Notices Watch Tower Sent to it July 2025 and Continuing with the DMCA Subpoena Watch Tower Served on it in December 2025. ......................................................... 6

  i.  Cloudflare's Disregard of Legal Notices from Watch Tower: Ten DMCA Notices Originally Sent on July 30, 2025 ........................................................................ 6

  ii.  This Court's Basis for Approval of Watch Tower's DMCA Subpoena ........................ 6

  iii.  Cloudflare's Disregard of Legal Process from Watch Tower: DMCA Subpoena.......... 7

C.  The Infringer Did Not File a Motion to Quash and Declined Watch Tower's  Offer to Extend the Subpoena Compliance Deadline .............................................................. 7

D.  Cloudflare's Failure to Respond to the Subpoena is Prejudicial to Watch    Tower .......... 8

ARGUMENT .................................................................................................................... 9

A.  Watch Tower's Reading of the Rules is Reasonable ....................................... 9

B.  Doe's Intention to File a Motion to Quash is Irrelevant and Watch Tower Had No Duty to Sit on Its Hands ............................................................................................... 11

C.  This Court Can and Should Hold Cloudflare in Contempt for its Failure to Comply with the DMCA Subpoena Served by Watch Tower ...................................................... 12

i.  The Court Can Hold Cloudflare in Contempt:.................................................. 12

  a. Cloudflare Was Properly Served and To Date Has Provided No Adequate Excuse .... 12

  b. A DMCA Subpoena is Not a Regular Attorney-Issued Subpoena .............................. 13

  ii.  The Court Should Hold Cloudflare in Contempt........................................ 15

  iii.  Cloudflare's Waiver of Its Objections Were the Result of a Calculated Decision and Should Not be Forgiven ......................................................................... 16

D.  Cloudflare and Doe's reliance on the decisions in In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.) and In re DMCA Subpoena to Reddit, Inc. is Unavailing ............ 19

  i.  No Similarity to the Google Case ............................................................... 19

ii.    No Similarity to the Reddit Case ................................................................ 20

E.    Doe cannot rely on the Library or Archive Exception to Copyright Law Because his Site Does not Meet the Statutory Requirements for an Archive or Library ................................... 22

F.    Doe's Fear of Removal from a Congregation of Jehovah's Witnesses Should Play No Part of the Analysis in this Copyright Infringement Case...................................................... 23

CONCLUSION................................................................................................................ 24

## INTRODUCTION

J. Doe's own words reveal the extraordinary scope of his unlawful conduct: using the Reddit handle "ComingOutaMyCage", he[1] boasts that he "launched a new website" and that it contains "every Watchtower, Awake, Golden Age, Book, Booklet, Brochure and a stack of manuals/guidelines," as well as "every video subtitle" of Watch Tower Bible and Tract Society of Pennsylvania's ("Watch Tower"). *See* Second Jean-Noel Decl. Composite Exhibit 1 ("Composite Exhibit 1") at 3. In short, he admits reproducing and distributing virtually the entire corpus of Watch Tower's copyrighted publications — from 1880 to present. Although Doe's identity remains unknown, he describes himself as a knowledgeable "software engineer" — someone who indisputably understands what he is doing. *See* Composite Exhibit 1 at 5, 7, and 9.

The Copyright Act reserves the exclusive right to display, reproduce, and distribute copyrighted works to copyright owners such as Watch Tower. 17 U.S.C. § 106. The Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, enforces those rights through its notice and removal provision (§ 512(c)(1)(C)) and its subpoena provision (§ 512(h)), which authorizes the pre-suit disclosure of information regarding infringers.

Watch Tower sent Cloudflare — a billion-dollar online service provider — DMCA compliant notices. [D.E. 10-3 at 7-29]. Cloudflare entirely flouted its statutory obligation to "expeditiously [] remove, or disable access to the" infringing material and inform its user of the notices. 17 U.S.C. § 512(c)(1)(C); 17 U.S.C. §512(g). Watch Tower later served Cloudflare with a valid subpoena under Section 512(h) (hereinafter "DMCA subpoena"). [D.E. 10 at ¶ 8]. Despite determining that the subpoena was valid, Cloudflare unilaterally refused to comply. [D.E. 21-1; D.E. 21-3]. Cloudflare is wasting valuable time. Depending on Cloudflare's response to the

---

[1] For sake of simplicity, this brief will refer to J. Doe as Doe and use the pronouns he/him/his.

subpoena, Watch Tower may need to subpoena additional entities who are at this point unknown by Watch Tower, and currently not under obligation to preserve data which Watch Tower may need for its lawsuit against the infringer.

With Cloudflare defying both the DMCA and the Federal Rules, Watch Tower took the prescribed step to compel compliance: seeking an Order to Show Cause why Cloudflare should not be held in contempt. Contempt is warranted. Cloudflare has willfully ignored its statutory and procedural obligations, effectively substituting its own judgment for that of the Court. In doing so, it deprived its user of over four months of critical lead time to obtain counsel and then chose not to comply with the subpoena based on its unsupported assumption that the Court would grant additional time for a potential motion to quash.

It then, decided — again unilaterally — that its untimely, and still unserved, objections should nonetheless be considered, and further assumed that Watch Tower's infringement claims would fail. This type of self-help has no basis in the law. Cloudflare's willful noncompliance is prejudicial to Watch Tower. Its conduct warrants a finding of contempt.

### STATEMENT OF FACTS[2]

**A.    Doe's Infringement of Watch Tower's Copyrights**

Doe admits that he created an exhaustive website, which he calls JWS Library, containing "content Watch Tower has published dating from 1890 to present." [D.E. 12 at 2]. All of Watch Tower's works published from 1931 to present are still under copyright protection. Doe admits that he did not transform Watch Tower's works in any way. *Id.* To the contrary, Doe used his site to redistribute entire unedited copies of Watch Tower's works. *Id.* ("Providing the source material also allows Doe to demonstrate the tool's accuracy and avoid accusations of bias or fabrication.")

---

[2] Watch Tower hereby incorporates all facts asserted in its Memorandum of Law in Support of its Motion for Contempt Against Cloudflare, Inc. See D.E. 9.

Doe copied text and artwork verbatim as shown below, with the JWS Library site on the left and Watch Tower's official site on the right.



This wholesale copying of Watch Tower's work was of course Doe's intent. Doe boasted, "I have just launched a new website that's aim is to archive in a searchable form, all WT publications" and "Thanks to the community I believe I have every Watchtower, Awake, Golden Age, Book, Booklet, Brochure and a stack of manuals / guidelines. I have also scraped every video subtitle included in there." *See* Composite Exhibit 1 at 3**.**

Doe's infringing website imposed no limits on access or redistribution and even facilitated unlimited sharing by providing "Shareable Link[s]" to Watch Tower's content:



Doe is seeking to replace Watch Tower's market. Indeed, Doe stated his intent to market the website to Jehovah's Witnesses, the primary audience for much of Watch Tower's websites, noting "[t]his is meant to be a neutral website that hopefully PIMIs [(an acronym for Physically In

Mentally In Jehovah's Witnesses)] can feel comfortable on." *See* Composite Exhibit 1 at 11**.** When a user asked about optimizing the infringing site so it would compete with Watch Tower's site in search results, Doe confirmed that intention, stating "I've taken Google into consideration building this. Will only be a matter of time." *See* Composite Exhibit 1 at 13.

**B.    Cloudflare Has a Pattern of Disregarding Legal Process from Watch Tower, Starting with DMCA Notices Watch Tower Sent to it July 2025 and Continuing with the DMCA Subpoena Watch Tower Served on it in December 2025.**

**i.    Cloudflare's Disregard of Legal Notices from Watch Tower: Ten DMCA Notices Originally Sent on July 30, 2025**

On July 30, 2025, Watch Tower sent Cloudflare 10 DMCA notices.  [D.E. 10-3 at 7-29] Cloudflare did not respond.  On September 4, 2025, Watch Tower again contacted Cloudflare.  *See* Second Jean-Noel Decl. Exhibit 2 ("Exhibit 2").  This time, Cloudflare sent what appeared to be an auto-generated acknowledgment.  [D.E.10-4 at 2].  Despite this, Cloudflare did not remove the infringements.  On October 1, 2025, Watch Tower emailed Cloudflare for a third time and attached an email from a separate online service provider, Porkbun, indicating that Cloudflare was the host of the infringing sites.  *See* Second Jean-Noel Decl. Composite Exhibit 3 ("Composite Exhibit 3"). Cloudflare did not respond to this communication and again did not remove the infringing site. *See* Second Jean-Noel Decl. at ¶3.  The infringements remained online until after Watch Tower served the DMCA Subpoena and Doe decided to take down the site.  [D.E. 12 at 2].

**ii.    This Court's Basis for Approval of Watch Tower's DMCA Subpoena**

With clear evidence of copyright infringement and the infringer unidentified, Watch Tower obtained this Court's approval to serve a DMCA Subpoena on Cloudflare to secure the information necessary to enjoin the ongoing infringement and pursue damages through a copyright lawsuit. [D.E. 10 ¶ 6].

After reviewing Watch Tower's request, this Court found good reason to issue an order

directing the clerk to issue the DMCA Subpoena to Cloudflare. *See* Order Granting Subpoena, signed by J. Kenneth M. Karas, [D.E. 6]. The DMCA Subpoena set a compliance deadline of January 15, 2026. [D.E. 10 ¶7].

### iii. Cloudflare's Disregard of Legal Process from Watch Tower: DMCA Subpoena

After 34 days of silence post receipt of the subpoena, and 168 days of inaction following the infringement notices, and on the eve of the subpoena's compliance deadline, Cloudflare informed Watch Tower's counsel that it would not comply with the subpoena. [D.E. 10-8 at 2]. It stated, "we understand that our customer *may* be intervening in this case. We are therefore holding our response pending further updates." *Id.* It never objected to the subpoena, never requested more time to comply with the subpoena, and never motioned the Court to quash or modify the subpoena. [D.E.10 ¶10].

Cloudflare has never denied being the host of the infringing site. *Id.* If Cloudflare was not the host, it could have just said so. It may still say so.

Cloudflare has taken no action aimed at resolving this matter in good faith with Watch Tower. Cloudflare's Legal Department has communicated with J. Doe's legal counsel. [D.E. 21-2 at 2]. Watch Tower has never received a communication from Cloudflare's legal counsel. Watch Tower has only received communications from "Cloudflare Trust & Safety". *See* Second Jean-Noel Decl. at ¶ 3; [D.E. 21-3]. And two out of three of those messages appeared to be auto-generated responses – not good faith communications attempting to comply with the subpoena. [D.E. 10-4 at 2]; [D.E. 21-3 at 1]. To date, Cloudflare's counsel has never communicated with Watch Tower and its counsel. *See* Second Jean-Noel Decl. at ¶ 2.

### C.    The Infringer Did Not File a Motion to Quash and Declined Watch Tower's  Offer to Extend the Subpoena Compliance Deadline

In July 2025, approximately five months prior to receiving the DMCA Subpoena,

Cloudflare had already received ten valid DMCA notices informing it of infringing content.  [D.E. 10-3].  Each of the ten notices stated that "litigation in this matter is reasonably foreseeable."  *Id.*

Watch Tower also sought removal of Doe's infringing content from other platforms, including Google, LLC ("Google") and GitHub, Inc. ("GitHub") where he hosted the code for JWS-Library.one and Watch Tower's materials.  Second Jean-Noel Decl. Composite Exhibit 4. Those notices also stated that "litigation in this matter is reasonably foreseeable." *Id.*  Both GitHub ("Composite Exhibit 4") and Google acknowledged receipt of the DMCA notice(s).  *Id.*  GitHub represented that it notified its user of the removal of the infringements.  *Id*.

**D.    Cloudflare's Failure to Respond to the Subpoena is Prejudicial to Watch Tower**

Cloudflare holds information regarding the infringer and the infringing URLs.  [D.E. 10 ¶ 12].  The recipient of a DMCA subpoena may hold only partial identifying information about the infringer, such as an Internet Protocol ("IP") address, which in turn may require subpoenas to additional service providers to obtain the remaining data needed to identify the user.  *See* Second Jean-Noel Decl. at ¶ 5.  Watch Tower can identify the internet service providers that must be subpoenaed only after receiving Cloudflare's production.  *Id.*  If those other service providers delete the relevant records, there is no other means for Watch Tower to obtain the identity of the infringer and pursue a copyright infringement claim regarding the infringing website.  *Id.* Cloudflare's pattern of disregard for Watch Tower's copyrights, and its willful refusal to comply with the DMCA Subpoena, despite the lack of any objection or motion to quash forced Watch Tower to seek the Court's intervention in this matter.  *Id.* at ¶ 6.

On February 9, 2026 Watch Tower ordered service of the Proposed Order to Show Cause and all supporting documents along with a copy of Local Civil Rule 83.6 on Cloudflare's counsel. *Id.* at ¶ 7.

**ARGUMENT**

A.     **Watch Tower's Reading of the Rules is Reasonable**

_First,_ Watch Tower did not seek a pre-motion conference before filing its motion for an Order to Show Cause because the rules and its experience in the Southern District of New York indicate it was unnecessary.  Local Civil Rule 37.2, which Cloudflare cites, does <u>not</u> require a request for a pre-motion discovery conference if "the individual practices of the judge presiding over discovery require a different procedure."  Here, the Court's individual rules "require a different procedure."  _Id._  Specifically, they "except motions brought on by Order to Show Cause" from the pre-motion conference requirement.  _Individual Rules of Practice for the Honorable Kenneth M. Karas, Rule II.A._

The Advisory Committee's Note to Rule 45 also makes clear that an Order to Show Cause is appropriate here.  When citing the Advisory Committee's Note, Cloudflare conveniently leaves out the portion that says:

> **Often contempt proceedings will be initiated by an order to show cause**, and an order to comply or be held in contempt may modify the subpoena's command. Disobedience of such an order may be treated as contempt.

Fed. R. Civ. P. Rule 45 (Advisory Committee's Note to 2013 Amendment) (emphasis added).

On a previous occasion in the Southern District of New York, when a different service provider failed to object or comply with a DMCA subpoena from Watch Tower, Watch Tower followed the Local Rule 37.2 process but was redirected by the judge to seek an Order to Show Cause instead.  _See In re DMCA Subpoena to Facebook, Inc._, 7:18-mc-00471, D.E. 7 and D.E. 8 ("The pre-motion conference requirement is waived. Watch Tower may pursue the motion, but _**it should tee it up via an Order to Show Cause**_.") (emphasis added).

_Second_, Local Rule 83.6. does not state _when_ to serve an Order to Show Cause.  Watch Tower drew the logical conclusion that it should wait until the Court granted its request for the

Order before formally serving it. While this Court's individual rules do not specifically address this issue, Watch Tower is not alone in its understanding. *See* Individual Rules of Practice of Judge Cathy Seibel, Attachment A at ⁋4 ("After the Judge signs the Order to Show Cause, it will be docketed. The moving party must ***then*** serve a copy of the Order to Show Cause, and the supporting documents, on the defendant as directed in the Order to Show Cause.") (emphasis added).

As a practical matter, because Watch Tower's counsel emailed a copy of its Proposed Order to Show Cause and supporting documents to Cloudflare shortly after it filed them, Cloudflare received notice of them sooner than it would have had Watch Tower formally served them on Cloudflare. Nonetheless, in the interest of not wasting any further judicial resources on this argument, Watch Tower has since formally served the Proposed Order to Show Cause and supporting documents on Cloudflare's Counsel. *See* Second Jean-Noel Decl. at ⁋ 7.

*Third*, Cloudflare complains that "Watch Tower moved for Contempt on an order to show cause . . . without having made a 'clear and specific showing by affidavit that contains good and sufficient reasons why a procedure other than by notice of motion is necessary." [D.E. 20 at 2]. This accusation is untrue. The declaration of Watch Tower's counsel explained the need for urgency in this matter. *See* Jean-Noel Decl. at ⁋⁋ 12-13.

There is urgency because while Cloudflare is on notice of the subpoena and should preserve responsive information, Cloudflare is not the only relevant service provider. Watch Tower may need to use the information obtained from Cloudflare, an <u>Online</u> Service Provider ("OSP"), in a discovery request to one or more <u>Internet</u> Service Provider ("ISP") that is not subject to pre-suit discovery. *See* Second Jean-Noel Decl. at ⁋ 5. Those ISPs are not yet identifiable by Watch Tower, do not know about this subpoena action, and are not currently subject to preservation requirements.

They routinely destroy information pursuant to set retention periods.  *See, e.g.*, *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 239, 242 (S.D.N.Y. 2012) ("expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.")

Watch Tower cannot know what identifying information Cloudflare possesses about Doe, nor whether that information is accurate.  As a result, Watch Tower cannot determine which additional entities it may need to subpoena until Cloudflare provides its response.  For example, if Cloudflare provides only IP addresses, that information alone cannot identify Doe.  Watch Tower would then need to subpoena the ISP associated with those addresses, but if the ISP has already deleted the relevant records — as routinely happens — Watch Tower may be permanently unable to identify Doe or pursue relief.  Given that even a basic understanding of the industry makes clear why timely compliance is critical, it is hard to believe that Cloudflare does not recognize that its lack of response, or even its delay, harms Watch Tower.

**B.    Doe's Intention to File a Motion to Quash is Irrelevant and Watch Tower Had No Duty to Sit on Its Hands**

Even if Watch Tower knew of Doe's intention to file a motion to quash, it had no reason to believe such a motion would be filed promptly.  And because Doe and his counsel are likely aware that ISP records are routinely deleted, Doe has every incentive to delay compliance with the subpoena.

Since "Doe resides outside the United States," it will likely take even longer for Watch Tower to navigate a foreign legal system to compel Doe's ISP to release identifying information. [D.E. 12 at 1].  Unlike Doe, Watch Tower will undoubtedly be harmed by the delay.  Once that harm occurs, Watch Tower may be effectively prevented from obtaining damages or enjoining Doe's ongoing and future infringements.  And because Watch Tower does not know Doe's identity, if he reposts the same content on another site, Watch Tower would be forced to repeat the

DMCA subpoena process without even knowing it is pursuing the same infringer.

Moreover, any delay by Watch Tower in pursuing the subpoena or the related infringements could have been interpreted as a lack of genuine interest in enforcing its copyright claims.  In a previous case, the court found that "Watch Tower failed to aggressively pursue … [a] subpoena's enforcement" and therefore overlooked a two-month delay in filing a motion to quash. *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 517 (S.D.N.Y. 2022) ("Google Case").  Given Cloudflare's refusal to substantively engage with Watch Tower's counsel, and Doe's persistent efforts to delay and evade accountability for copyright infringement, Watch Tower had no reason to sit idle.  Its actions reflect diligent pursuit of a valid copyright infringement claim.

**C.    This Court Can and Should Hold Cloudflare in Contempt for its Failure to Comply with the DMCA Subpoena Served by Watch Tower**

**i.    The Court Can Hold Cloudflare in Contempt:**

**a.    Cloudflare Was Properly Served and To Date Has Provided No Adequate Excuse**

Cloudflare would have this Court believe that Rule 45 subpoena compliance deadlines do not matter, and a properly served subpoena could simply be ignored with impunity.  But that is not the case.  Rule 45(g) clearly sets forth contempt as the sanction for non-compliance and explains the two requirements for when it may be found.  It states,

> **Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, [1] having been served, [and, 2] fails without adequate excuse to obey the subpoena or an order related to it.

Fed. R. Civ. P. 45(g).

Cloudflare does not dispute that it was properly served.  Whether Cloudflare had adequate excuse for its failure to obey the subpoena is a question rightfully decided by a judge.  *See, e.g.*,

*In re Application of the Kingdom of Morocco*, 2009 WL 1059786, at *2 (finding that where non-party was served with two attorney-issued subpoenas failed to comply, "submitted no response to the OSC, and has shown the Court no adequate excuse for his failure to obey Morocco's subpoena . . . the Court . . . has the power to hold Aldi in contempt . . . .")

    **b.  A DMCA Subpoena is Not a Regular Attorney-Issued Subpoena**

The plain language of Rule 45 does not *mandate* any additional order compelling compliance with a subpoena before contempt. "Undeniably, a valid subpoena is a legal instrument, non-compliance with which can constitute contempt of court." *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1364 (2d Cir. 1991).[3] The fact remains that whether a Court chooses to exercise its power to hold a non-party in contempt for failure to comply with a court-ordered subpoena or not, "[t]he Court has the power under this rule to impose contempt simply on the basis of failure to comply with a subpoena." *PaineWebber Inc.* v. *Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002).

More importantly, the cases that Cloudflare cites as requiring an order compelling compliance before finding contempt only discuss *attorney-issued* subpoenas. Cloudflare improperly attempts to saddle DMCA subpoenas, the issuance of which requires court intervention, with this additional prerequisite that generally applies to attorney-issued subpoenas.

For example, Cloudflare cites *Jam Indus. USA, LLC v. Gibson Brands, Inc*., noting that the Court there "declin[ed] to impose sanctions" even when a deponent failed to appear in response to a "subpoena [that] was properly served." [D.E. 20 at 6], 2020 WL 4003280, at *6 (S.D.N.Y. July

---

[3] Cloudflare also conflates the rules for contempt in connection with Rule 37 subpoenas and the rules for contempt for Rule 45 subpoenas. They are not the same. *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d at 1364-65 (sanctions pursuant to Rule 37(b) could not be imposed "[but] might nonetheless be affirmed pursuant to Rule 45...").

15, 2020).  However, *Jam Indus.* clarified that "the [subpoena for] deposition...was *issued without court involvement* and no court order was violated when the deposition did not go forward."  *Id.* (emphasis added).  This same critical distinction applies to all the other cases Cloudflare relies upon — none involved court-ordered subpoenas. *See, e.g., Tuqui Tuqui Dominicana, S.R.L. v. Castillo,* 2020 WL 1689763, at *6 (S.D.N.Y. Apr. 7, 2020) (declining to hold a non-party witness in contempt where an attorney-issued subpoena was at issue); *Brentlor, Ltd. v. Schoenbach*, 2018 WL 5619951, at *3 (S.D.N.Y. Jan. 9, 2018) (same).

Both this District and the Second Circuit have recognized that court involvement in obtaining a subpoena transforms it into a court order.  As the Court noted in *Galgano* v. *Cty. of Putnam, et. al*, judicial intervention "transforms the subpoena into a court order."  No. 16-CIV-3572 (KMK)(PED), 2021 WL 2036709, at *1 (S.D.N.Y. May 21, 2021).  Discussing this important distinction, the Court explained,

> Despite the self-executing nature of attorney-issued subpoenas, federal judges are sometimes called upon to "So Order" subpoenas. (*citations omitted*).  This Court has occasionally done so, typically where the recipient of the subpoena is subject to privacy regulations or has an announced policy requiring a court order, and where the relevance of the subpoenaed material is clear.

*Id.*  The Court continued,

> when a Court so-orders a subpoena, it has an impact different from an attorney-issued subpoena.  ***Court involvement transforms the subpoena into a court order*** and '[t]hat intervention serves to alert the offending party to the seriousness of its noncompliance and permits judicial scrutiny of the discovery request.... A subpoena issued by counsel does not fulfill these purposes.

*Id.* (emphasis added) quoting *New Falls Corp. v. Soni Holdings, LLC,* 2018 WL 8014321, at *1 (E.D.N.Y. Oct. 15, 2018) quoting *Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1364-65 (2d Cir. 1991) ("The trial subpoena served upon Ekinciler was issued without any court involvement. Nor did any court proceeding take notice of the subpoena

so as to transform the document request into a court order . . .").

This is true in the case of DMCA subpoenas. The subpoena applicant is required to attach the *proposed* subpoena for the Court's review. *See* 17 U.S.C. § 512(h)(2)(B). Were the subpoena wholly out of bounds – for example, requesting information that is not prescribed in 17 U.S.C. § 512(h)(3) – the Court could refuse to order the clerk to issue the subpoena. A DMCA-subpoena must be ordered by a Court and should be treated accordingly.

### ii.    The Court Should Hold Cloudflare in Contempt

Cloudflare even fails the three-part test to which it cites. *First Cap. Est. Invs., LLC v. Sddco Brokerage Advisors, LLC* states:

> A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.

No. 18CV2013JGKKNF, 2020 WL 1878825, at *2 (S.D.N.Y. Apr. 14, 2020) (internal quotations omitted). First, the Court-ordered subpoena here was clear, unambiguous, and supported by both the previously-sent DMCA takedown notices and the statute allowing for its issuance. *See* Second Jean-Noel Decl. Exhibit 5 ("Exhibit 5"). Second, Cloudflare concedes that it did not comply with the subpoena. [D.E. 21-3] ("We are therefore holding our response pending further updates.") Third, the fact that Cloudflare did not so much as have its legal counsel reach out to Watch Tower or its counsel about compliance – rather proceeding right to a refusal to comply despite its determination that "this [subpoena] is a valid request, and we are required to provide the requested information" – is clear evidence that Cloudflare did not diligently attempt to comply with the subpoena in a reasonable manner. [D.E. 21-1 at 1].

### iii.   Cloudflare's Waiver of Its Objections Were the Result of a Calculated Decision and Should Not be Forgiven

If Cloudflare found something defective or deficient about the subpoena, its remedy was to object pursuant to Rule 45(d)(2)(B)[4].  Cloudflare neither objected to the subpoena, nor invoked Rule 45(d)(3)(A).  [D.E. 10. at ¶ 10].  Thus, it waived any objection to the subpoena.  Fed. R. Civ. P. 45(d)(2)(B).

Cloudflare's reliance on the *Homeward Residential, Inc. v. Sand Canyon Corp*. case as the basis for forgiveness of its failure to object to the subpoena is misplaced.  No. 12-CV-5067-JFK-JLC, 2017 WL 4676806, at *17 (S.D.N.Y. Oct. 17, 2017).  First, the *Homeward Residential* Court acknowledged that "[t]he failure to serve written objections to a subpoena within the time specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections . . . ."  *Id.*  Second, the subpoenas at issue in *Homeward Residential* were attorney-issued subpoenas – not court-ordered subpoenas.  *See* Civil Docket for Case No.: 1:12-cv-05067-JMF-JLC (including <u>no</u> order to issue a subpoena); *see* Civil Docket for Case No. 1:12-cv-07319-JMF-JLC (including <u>no</u> order to issue a subpoena).  Third, the objections to the subpoenas in that case included objections based on work product doctrine, and attorney-client privilege.  *Homeward Residential, Inc.,* 2017 WL 4676806, at *16.

While the *Homeward Residential* Court exercised its authority to waive untimely objections, it made clear that forgiveness is only appropriate "in unusual circumstances and for

---

[4] Concurrently with requesting the subpoena at issue here, Watch Tower also sought and served a subpoena on Google, LLC regarding what it now knows to be the same infringer. That subpoena imposed the same compliance deadline. EFF also communicated its request to hold compliance with the subpoena to Google LLC.  *See In re: DMCA Section 512(h) Subpoena to Google, LLC*, Case no. 7:25-mc-00557-NSR, [D.E.8 at 2]("We have also advised Google of Doe's intention to move to quash, and understand that the company will hold production of the requested information pending the outcome of the motion or another amicable resolution.")  Unlike Cloudflare, however, Google objected to the subpoena. As a result, Watch Tower did not file a motion for an order to show cause in that matter.  *See In re: DMCA Section 512(h) Subpoena to Google, LLC*, Case no. 7:25-mc-00557-NSR.

good cause." *Homeward Residential, Inc.* 2017 WL 4676806, at *17. The subpoenaing party there "dropped the matter" for over two years after learning that the non-party would not consent to the production. It seems fair that ignoring non-compliance with a subpoena for over two years would be considered an "unusual circumstance." *Id.*

The circumstances here are not unusual and do not merit the exceptional relief of forgiving Cloudflare's waiver of objections. If a non-party could evade a subpoena merely by acknowledging receipt and then announcing they will not comply pending the possibility of a filing with no timetable, Rule 45(d)(2)(B) would be left toothless and non-parties would effectively be allowed to grant themselves stays from compliance.

Further evaluation of the elements necessary to excuse untimely objections shows that a basis for such relief does not exist here. The "unusual circumstances" that merit forgiveness of untimely objections exist where

> [i] the subpoena is overbroad on its face and exceeds the bounds of fair discovery, [ii] the subpoenaed witness is a non-party acting in good faith, and [iii] counsel for witness and counsel for subpoenaing party were in contact concerning the witness' compliance prior to the time the witness challenged legal basis for the subpoena.

*Sines v. Yiannopoulos*, No. 20 MISC. 241 (KPF), 2020 WL 6058279, at *4 (S.D.N.Y. Oct. 14, 2020)(internal quotations omitted).

First, not only was Watch Tower's subpoena reviewed by this Court, the subpoena was narrowly-tailored to the copyright infringement alleged in the DMCA notices. The subpoena only requested the information that the DMCA subpoena provision allows – "information sufficient to identify the alleged infringer of the material described in the notification". 17 U.S.C. § 512(h)(3); *see* Exhibit 5. What is more, the subpoena provided the links to specific infringements so there would be no doubt that responsive data would only be related to the actual infringements or owner of the infringing website. *Id.*

17

Cloudflare's reliance on *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)* to claim it had "good reason to believe that Watch Tower's subpoena is infirm" flatly contradicts its own statement to Doe that it had "determined that this [subpoena] is a valid request, and we are required to provide the requested information." 581 F. Supp. 3d 509 (S.D.N.Y. 2022); *compare* [D.E. 20 at 9] *with* [D.E. 21-1 at 1].

Any suggestion that Watch Tower's subpoena exceeds the bounds of fair play is absurd. The subpoena provided over 30 days for compliance, more than double the amount of time provided by the Federal Rules. *See* Fed. R. Civ. P. 45(d)(2)(B). As permitted, it also commanded compliance less than 100 miles away from Cloudflare's New York City office. *See* Exhibit 5; *see also* [D.E. 10. ¶ 8]; *see* Fed. R. Civ. Proc. 45(c)(2)(A).

Second, Cloudflare's claim of good-faith conduct toward Watch Tower is flatly unsupported by the record. Here again, Watch Tower and its counsel sent Cloudflare no less than 12 emails about the infringements on JWS Library. *See* [D.E. 10-3 at 7-29]; Exhibit 2**;** Composite Exhibit 3. Two of Cloudflare's three responses appeared to be auto-generated responses – not good faith communications seeking a resolution. *See* [D.E.10-4]*;* [D.E. 21-3 at 1]. And the only substantive communication Watch Tower received from Cloudflare was a two-sentence email communicating its refusal to comply with the subpoena. [D.E. 21-3]. While Cloudflare has a Legal Department [*see* D.E. 21-2]*,* its attorneys never communicated with Watch Tower. *See* Second Jean-Noel Decl. at ¶ 3. And in yet another instance of hiding the ball, Cloudflare does not deny that it is the host [D.E. 10 at ¶ 10], but instead mocks Watch Tower for relying on information indicating that it is the host, even though it could simply state whether it is the host. [D.E. 20 at 3.] Cloudflare's conduct in this matter is not the good faith conduct that would warrant excusing its failure to serve timely objections to Watch Tower's subpoena.

Cloudflare woefully fails to satisfy the third requirement for excusing untimely objections because despite having a Legal Department, Cloudflare's counsel never communicated with Watch Tower's counsel. *See* [D.E. 21-3]; *see Homeward Residential, Inc.*, 2017 WL 4676806, at *17 ("*counsel* for witness and *counsel* for subpoenaing party were in contact concerning the witness' compliance . . . .") (emphasis added). To be sure, Cloudflare is hardly a penniless, *pro se* non-party without the means to obtain counsel. As of January 15, 2026, Cloudflare's market capitalization was $65.23 billion. *Cloudflare Inc. (NET) Market Cap – January 2026 Update*, Capital.com,

https://capital.com/en-int/markets/shares/cloudflare-inc-share-price/market-cap (last visited Feb. 9, 2026). Thus, Cloudflare fails to satisfy the *Homeward Residential* requirements for forgiveness of its failure to timely object to the DMCA Subpoena.

**D.      Cloudflare and Doe's reliance on the decisions in *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)* and *In re DMCA Subpoena to Reddit, Inc.* is Unavailing**

The infringements at issue here bear no relationship to the infringements at issues in Watch Tower's prior cases cited by Cloudflare. Those two cases are: *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509 (S.D.N.Y. 2022) (hereinafter, the "the *Google C*ase"), and *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875 (N.D. Cal. 2020) (hereinafter, the "the *Reddit C*ase").

### i.      No Similarity to the Google Case

In the *Google C*ase, the pseudonymous target of the subpoena, Kevin McFree, created a

thirteen-minute video depict[ing] Lego characters viewing excerpts of the JW Video (mainly those portraying Watch Tower's other four works), over which Movant interjected, superimposed, and overdubbed parodic commentary.

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),* 581 F. Supp. 3d at 514. Neither party disputed that McFree "used Watch Tower's works in the Dubtown Video to criticize, satirize,

and comment on the practices of Jehovah's Witnesses, a manner that is fundamentally at odds with Watch Tower's original purpose for its videos..." *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),* 581 F. Supp. 3d at 519–20.  Had Cloudflare meaningfully reviewed the ten DMCA notices it received, it would have recognized that the JWS Library Site engaged in none of these activities.  Doe simply copied Watch Tower's copyrighted works verbatim.

Moreover, unlike McFree—who used "different percentages of Watch Tower's works, some more substantially than others," *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),* 581 F. Supp. 3d at 522 —Doe redistributed *entire, unedited* copies of Watch Tower's works. *See* [D.E. 12 at 2].

Finally, unlike McFree, Doe expressly admitted his intention to usurp Watch Tower's market.  As the *Google* court explained, "[a]n infringer usurps the original work's market when his 'target audience and the nature of the infringing content is the same as the original.'" *Id.* at 523 quoting *Cariou v. Prince,* 714 F.3d 694, 705 (2d Cir. 2013).  Here, Doe's own words highlight his intention to usurp Watch Tower's market.  For example, when a user asked about "optimizing the infringing site so it would compete with Watch Tower's site in search results", Doe confirmed that intention, stating "I've taken Google into consideration building this. Will only be a matter of time." *See* Composite Exhibit 1 at 13.

### ii.    No Similarity to the Reddit Case

The *Reddit* Case is equally unavailing.  At the most basic level, the use of Watch Tower's works there bears no resemblance to the conduct at issue here because the materials were posted on a platform expressly designed for commentary—Reddit.

In *Reddit*, the works at issue were "an image of a solicitation for donations on the back cover of the November 2018 edition of 'The Watchtower' magazine" and "a screenshot of a chart" that questionably met "the minimum standards of originality required for copyright protection'"

and for which "Watch Tower did not have a Certificate of [Copyright] Registration until . . . the motion for review was pending." *In re DMCA Subpoena to Reddit, Inc.,* 441 F. Supp. 3d 875, 878-80 (N.D. Cal. 2020).

Here, not only is the sheer quantity of works used by Doe far more egregious, but all of the works at issue were registered long before Watch Tower sought the subpoena. Moreover, Doe did not post Watch Tower's works on a platform designed for commentary. Instead, he reproduced, displayed, and distributed them on a site that, by design, prohibited commentary. This distinction is key because in the *Reddit* case, the Court found,

> There is no material dispute that Darkspilver used the ad and chart for criticism and commentary in a manner fundamentally at odds with Watch Tower's original purposes. He put them on a forum expressly dedicated to criticism of Watch Tower by former members, succeeded in generating a number of comments from other users critical of Watch Tower, and declared that his sole purpose was to criticize the organization and spark discussion about it . . . . This was a transformative use.

*In re DMCA Subpoena to Reddit, Inc.,* 441 F. Supp. 3d at 884.

While Watch Tower may still disagree with the Court's finding that its works at issue there "were strongly in the nature of functional and instructive documents," the two works at issue in that case greatly differ from the highly creative collection of works at issue in the present matter, which include audio-visual works, entire Watchtower magazines, illustrated-books, and the like. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 885.

For the third fair use factor, the Court found that "Darkspilver copied what was reasonably necessary from it, and the chart, to make his criticisms and comments understandable. He did not help himself to an oversized portion of Watch Tower's works *vis-à-vis* his critical message." *Id.* Doe, by contrast, has helped himself to an oversized portion of Watch Tower's works. *See* Composite Exhibit 1 at 3. And that with no commentary.

Regarding the fourth fair use factor, the *Reddit* Court found that "Darkspilver's use of the ad and chart for criticism was fundamentally contrary to Watch Tower's purposes. There is no likelihood that this critical use could substitute for the originals and thereby harm their potential market or value." *In re DMCA Subpoena to Reddit, Inc*., 441 F. Supp. 3d at 886. The JWS Library site, by contrast, was created for the comfort of Jehovah's Witnesses and with the intention to usurp Watch Tower's market. *See* Composite Exhibit 1 at 11 and 13.

It is entirely disingenuous for Cloudflare to rely on the Courts' decisions in the *Google* and *Reddit* cases to justify its refusal to comply with the subpoena, while at the same time disregarding the very legal principles those cases establish.

**E.    Doe cannot rely on the Library or Archive Exception to Copyright Law Because his Site Does not Meet the Statutory Requirements for an Archive or Library**

Simply labeling an infringing website as an "archive" does nothing to obscure blatant copyright infringement or shield Doe from liability. JWS Library does not meet the Copyright Act's strict requirements for archives. 17 U.S.C. § 108(g). As a threshold matter, JWS Library cannot qualify as an archive because it imposes no limit on the number of users who can access digital copies of Watch Tower's works.

Section 108(i) further states, "[t]he rights of reproduction and distribution under this section do not apply to a musical work, a pictorial, graphic or sculptural work, or a motion picture or other audiovisual work other than an audiovisual work dealing with news . . . ." 17 U.S.C. § 108(i). Thus, the library/archive exception cannot shield Doe's infringement of any of Watch Tower's musical, pictorial, graphic, or audiovisual works made available on the site. *See* Screenshot of Infringement at 5 *supra*.

And if the statute itself were not clear enough, the Second Circuit removed all doubt in *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163 (2d Cir. 2024). Confronting the question:

> is it "fair use" for a nonprofit organization to scan copyright-protected print books in their entirety and distribute those digital copies online, in full, for free, subject to a one-to-one owned-to-loaned ratio . . . all without authorization from the copyright-holding publishers or authors?

the Court answered unequivocally:

> "[a]pplying the relevant provisions of the Copyright Act as well as binding Supreme Court and Second Circuit precedent, we conclude the answer is no."

*Id.* at 174. If the controlled, one-to-one distribution model rejected in *Hachette* is not fair use, then it follows *a fortiori* that making **unlimited** digital copies of copyrighted works available for **unlimited** redistribution cannot be fair use. That is precisely what Doe did with the JWS Library site. No self-applied label of "archive," nor any asserted purpose of promoting research, can disguise such clear and pervasive copyright infringement.

## F.  Doe's Fear of Removal from a Congregation of Jehovah's Witnesses Should Play No Part of the Analysis in this Copyright Infringement Case

Doe's unsupported claim that he fears he will "be labeled 'apostates,' and excommunicated ... from the community" [D.E. 12 at 2] should not be considered by the Court. "[T]hose considerations play no role whatsoever" here because "'copyright law contains built-in First Amendment accommodations.' [Thus], [t]he doctrine of fair use provides everything needed to balance the competing interests of the First Amendment and the copyright laws." *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d at 882 and 887 (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 219–20 (2003)). Accordingly, this Court should decline any invitation to expand a

straightforward matter of copyright infringement into an inquiry concerning religious doctrine or internal religious discipline.

## CONCLUSION

Cloudflare is at the root of the issues that necessitated the present motion. Had Cloudflare fulfilled its statutory duty to remove the reported infringements and notify Doe of the DMCA notices, Doe would have had over four months to secure counsel before Watch Tower ever sought the current DMCA subpoena. Then, once Watch Tower served its subpoena, Doe's counsel would have had over a month to prepare and file any motion to quash.

Instead of fulfilling its statutory obligations, Cloudflare disregarded its duty to its subscriber, thereby creating the circumstances that forced Watch Tower to file its motion for an order to show cause. Cloudflare cannot, on one hand, deprive its user of the critical lead time necessary to obtain counsel and then, on the other hand, refuse to comply with—or object to—the subpoena on the assumption that the Court will afford the user additional time to file a potential motion to quash, all to the prejudice of Watch Tower. Cloudflare's disregard for its statutory obligations and the federal rules created the current predicament, and it should be held accountable.

**WHEREFORE**, petitioner Watch Tower requests that the Court issue an Order granting the relief previously requested.

I hereby certify that this memorandum of law contains 7,327 words.

Dated: February 10, 2026

Lawrenceville, Georgia                          Respectfully submitted,

                                                /s/ Melanie Baptiste-Jean Noel
                                                Melanie Baptiste-Jean Noel, Esq.
                                                SDNY Bar No. MN9573
                                                MBJN Law
                                                925 Cripple Creek Dr., Suite 400
                                                Lawrenceville, GA 30043
                                                Telephone: 678-439-7550

Facsimile: 678-426-9177
Email: mjnoel@mbjnlaw.com
*Attorney for Petitioner Watch Tower*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

I hereby certify that on February 10, 2026, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system.

Lawrenceville, GA,
February 10, 2026.

/s/ Melanie Baptiste-Jean Noel
Melanie Baptiste-Jean Noel, Esq.
SDNY Bar No. MN9573
MBJN Law
925 Cripple Creek Dr., Suite 400
Lawrenceville, GA 30043
Telephone: 678-439-7550
Facsimile: 678-426-9177
Email: mjnoel@mbjnlaw.com
*Attorney for Petitioner Watch Tower Bible and Tract Society of Pennsylvania*