**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In Re DMCA Subpoena to Cloudflare, Inc.** | Case No. 7:25-mc-00555-KMK |

## CLOUDFLARE, INC.'S REPLY IN FURTHER OPPOSITION TO PETITIONER WATCH TOWER BIBLE AND TRACT SOCIETY OF PENNSYLVANIA'S MOTION FOR AN ORDER TO SHOW CAUSE WHY CLOUDFLARE, INC. SHOULD NOT BE HELD IN CONTEMPT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

    I.      Contempt Is Not Warranted Under Any Standard. ......................................................... 2

         A.  Contempt Is Not Warranted Because Cloudflare Did Not Defy A Court Order Compelling Cloudflare's Compliance with Watch Tower's Subpoena. ............................................................................................................. 2

         B.  Independently, Contempt Is Not Warranted Because Cloudflare Had an "Adequate Excuse" for Nonproduction by the Subpoena's Deadline. ................... 6

    II.     Watch Tower's Remaining Arguments Are Meritless. .................................................. 8

    III.    Plaintiff's Contempt Motion Violated Several Local Civil Rules. ............................. 10

CONCLUSION .................................................................................................................... 11

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Daval Steel Products v. M/V Fakredine*,
951 F.2d 1357 (2d Cir. 1991)..................................................................................................4, 5

*First Cap. Est. Invs., LLC v. Sddco Brokerage Advisors, LLC*,
2020 WL 1878825 (S.D.N.Y. Apr. 14, 2020).............................................................................2

*Galgano v. County of Putnam*,
2021 WL 2036709 (S.D.N.Y. May 21, 2021) ............................................................................4

*Golden Krust Franchising, Inc. v. Clayborne*,
2020 WL 7260774 (M.D. Fla. Dec. 10, 2020)...........................................................................3

*Gushlak v. Gushlak*,
486 F. App'x 215 (2d Cir. 2012)................................................................................................5

*In re Application of the Kingdom of Morocco*,
2009 WL 1059786 (S.D.N.Y. Apr. 16, 2009).............................................................................3

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
608 F. Supp. 3d 868 (N.D. Cal. 2022) .......................................................................................7

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*,
581 F. Supp. 3d 509 (S.D.N.Y. 2022)............................................................................6, 7, 8, 9

*In re Subpoena of Internet Subscribers of Cox Communications, LLC*,
148 F.4th 1056 (9th Cir. 2025) ..................................................................................................6

*In re Verizon Internet Servs., Inc.*,
257 F. Supp. 2d 244 (D.D.C. 2003) ...........................................................................................4

*Kerr v. Thomas*,
2017 WL 485041 (S.D.N.Y. Feb. 3, 2017).................................................................................3

*Kumar v. Nationwide Mut. Ins. Co.*,
2024 WL 216553 (E.D. Cal. Jan. 18, 2024) ...............................................................................3

*Malibu Media, LLC v. John Does 1-16*,
2012 WL 1681819 (D.D.C. Apr. 11, 2012) ................................................................................7

*New Falls Corp. v. Soni Holdings, LLC*,
2018 WL 8014321 (E.D.N.Y. Oct. 15, 2018).............................................................................4

*Roytlender v. D. Malek Realty, LLC*,
2023 WL 8473360 (E.D.N.Y. Mar. 24, 2023).............................................................................5

ii

*Signature Mgmt. Team, LLC v. Automattic, Inc.*,
    941 F. Supp. 2d 1145 (N.D. Cal. 2013) ................................................................4

*Sony Music Entertainment Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004)..............................................................6, 7

*Terraform Labs Pte. Ltd. v. RH Montgomery Props. Inc.*,
    2024 WL 21472 (E.D. Mo. Jan. 2, 2024) ............................................................3

*United States ex rel. Sasaki v. New York Univ. Med. Ctr.*,
    2011 WL 13257693 (S.D.N.Y. Aug. 23, 2011)...................................................10

**Statutes**

17 U.S.C. § 512(h)(1) ..................................................................................................4

17 U.S.C. § 512(h)(6) ..................................................................................................4

28 U.S.C. § 1782..........................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 45...............................................................................................1, 4, 5, 6

Local Civil Rule 83.6(d) ..............................................................................................1

Local Civil Rule 6.1(d) ..............................................................................................10

Local Civil Rule 37.2.............................................................................................8, 10

**INTRODUCTION**

Settled law and common sense foreclose a contempt finding against Cloudflare.[1] Time and again, recognizing the severity of contempt sanctions, courts have declined to hold a subpoena recipient in contempt unless the recipient defied a court order compelling compliance with the subpoena. No such order has issued here, and Cloudflare has committed to comply with any that may issue. The Court can deny Watch Tower's motion on that ground alone. Cloudflare's prompt acknowledgement of the subpoena and updates to Watch Tower regarding its position on the subpoena highlight Cloudflare's good faith and contrast sharply with the disregard for the judicial process required to justify contempt.

Independently, contempt is unwarranted because Cloudflare had a more than "adequate excuse" for not producing documents by the subpoena's compliance deadline. Fed. R. Civ. P. 45(g). Cloudflare learned about Doe's planned intervention only two days before that deadline and one month after Cloudflare notified Doe of the subpoena. By holding its response, Cloudflare avoided irreparably harming Doe by potentially revealing their identity before Doe could be heard. Cloudflare acted reasonably, given that courts have excused minor delays in moving to quash and have not required production while such a motion is pending. Nothing in Watch Tower's response suggests contempt is remotely warranted under these circumstances.

The Court should deny Watch Tower's motion and award Cloudflare its costs, disbursements, and fees for responding to it. *See* L. Civ. R. 83.6(d).

---

[1] Capitalized terms have the meanings assigned in ECF No. 20 ("Cloudflare Br."), unless otherwise stated.

**BACKGROUND**

Cloudflare's opening brief recites the relevant background.  In its response, Watch Tower asserts that "Cloudflare has never denied being the host of the infringing site" and complains that Cloudflare "did not remove the infringements" after having allegedly received Watch Tower's DMCA notices.  ECF No. 23 ("WT Response") at 6, 7.  But Cloudflare explained to Watch Tower in its September 4, 2025 correspondence that Cloudflare "does not have the ability to remove content hosted by others."  ECF No. 10-4.  *See also* ECF No. 21-3 (Cloudflare again informing Watch Tower that Cloudflare "does not have access to our customers' content").  Cloudflare also explained that "[f]or the vast majority of our customers, Cloudflare is not a hosting provider."  *Id.*; *see also* ECF No. 10-4 (similar).  That is true for the www.jws-library.one website: Cloudflare does not host the website and cannot remove, alter, or control content on it.  *See* Supplemental Decl. of Mel Tortorella ("Suppl. Tortorella Decl.") ¶ 4.  If Watch Tower sought to clarify that point, it could have done so at any point *before* rushing to seek contempt against Cloudflare.[2]

**ARGUMENT**

I.    **Contempt Is Not Warranted Under Any Standard.**

      A.    <u>Contempt Is Not Warranted Because Cloudflare Did Not Defy A Court Order Compelling Cloudflare's Compliance with Watch Tower's Subpoena.</u>

Watch Tower cannot show by clear and convincing evidence that Cloudflare failed to comply with, and has not shown any diligence in complying with, an unambiguous court order. *See, e.g.*, *First Cap. Est. Invs., LLC v. Sddco Brokerage Advisors, LLC*, 2020 WL 1878825, at *2 (S.D.N.Y. Apr. 14, 2020).  In the context of Rule 45 subpoenas, courts in this District (and beyond)

---

[2] Yesterday, a federal holiday, at approximately 2:50 p.m. Eastern Time, Watch Tower's counsel emailed the undersigned, seeking to confer with Cloudflare for the first time about service of Watch Tower's order-to-show-cause papers, whether Cloudflare hosts the relevant website, and what identifying information Cloudflare possesses about Doe.  Cloudflare's counsel expects to confer with Watch Tower's counsel later this week.

have routinely held that contempt is not warranted based only on noncompliance with a subpoena; the subpoenaed party generally must have defied a separate court order compelling compliance with that subpoena. *See* Cloudflare Br. 6-7 & n.1 (collecting cases).[3]  That "practice is followed because an order of contempt" is a "drastic remedy." *Kerr v. Thomas*, 2017 WL 485041, at *4 (S.D.N.Y. Feb. 3, 2017), *report and recommendation adopted sub nom. Kerr v. John Thomas Fin.*, 2017 WL 1609224 (S.D.N.Y. May 1, 2017) (cleaned up).

Here, it is undisputed that Watch Tower has not secured an order compelling Cloudflare's compliance with Watch Tower's subpoena.  Because Cloudflare cannot have defied a non-existent order, contempt is not warranted.

To resist that conclusion, Watch Tower attempts to conjure an exception for DMCA subpoenas, arguing that noncompliance with a DMCA subpoena is sufficient to trigger contempt even absent defiance of a court order compelling compliance with that subpoena.  *See* WT Response at 13-14.  Watch Tower's argument fails for several reasons.

*First*, it clashes with the DMCA's text.  The statute provides that "remedies for noncompliance with the subpoena[] shall be governed to the greatest extent practicable by those

---

[3] *See also In re Application of the Kingdom of Morocco*, 2009 WL 1059786, at *2 (S.D.N.Y. Apr. 16, 2009) ("[B]efore holding Aldi in contempt, [the Court] should first order Aldi to *immediately* comply with Morocco's subpoena. Then, if Aldi still refuses to comply, sanctions will be appropriate.") (emphasis in original) (cited in WT Response at 13); *Kumar v. Nationwide Mut. Ins. Co.*, 2024 WL 216553, at *4 (E.D. Cal. Jan. 18, 2024) ("The clear intent of the Rule [45] is that, where a third-party has not complied with a deposition subpoena, an order for compliance is the proper first step and sanctions are a potential second step."); *Golden Krust Franchising, Inc. v. Clayborne*, 2020 WL 7260774, at *2 (M.D. Fla. Dec. 10, 2020) ("[B]ecause the undersigned is ordering [nonparty] Ms. Heredia to comply with the Subpoena, the sanction of contempt should not be imposed pending Ms. Heredia's compliance with the Court's Order and the Subpoena and is denied."). *Cf. Terraform Labs Pte. Ltd. v. RH Montgomery Props. Inc.*, 2024 WL 21472, at *1 (E.D. Mo. Jan. 2, 2024) (compelling nonparty to comply with subpoena after it failed to respond to both subpoena *and* movant's motion to compel and noting that "[f]ailure to abide by this Order may result in contempt proceedings").

provisions of the Federal Rules of Civil Procedure governing the . . . enforcement of a subpoena duces tecum." 17 U.S.C. § 512(h)(6). So, Rule 45(g)'s enforcement provisions, including those governing contempt, "are incorporated by reference in § 512(h)(6)." *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1153 (N.D. Cal. 2013). It strains credulity to suggest that the DMCA does not also incorporate judicial authority, like the cases discussed above, interpreting and applying those enforcement provisions. *Cf. In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 251 (D.D.C.), *rev'd on other grounds sub nom. Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) (citing cases applying Rule 45's contempt provisions in analyzing how they apply to DMCA subpoenas). And here, Watch Tower has conceded that Rule 45 governs its subpoena, having expressly invoked Rule 45 in the subpoena (*see* ECF No. 1-1 at 2) and moved for contempt under Rule 45 and Section 512(h)(6) (*see* ECF No. 8).

*Second*, an *ex parte* order directing the clerk of court to *issue* a DMCA subpoena cannot possibly be an order compelling categorical *compliance* with the subpoena. Watch Tower has not cited any cases to support that puzzling proposition.[4] And one of its cases, *Daval*, all but refutes it. There, the Court explained that "a subpoena, obtainable as of course from the Clerk of the Court," much like the DMCA subpoena here,[5] "is not of the same order as one issued by a judicial officer **in the resolution of a specific dispute**." 951 F.2d at 1364 (emphasis added). The latter

---

[4] Neither *Galgano v. County of Putnam*, 2021 WL 2036709 (S.D.N.Y. May 21, 2021), nor *New Falls Corp. v. Soni Holdings, LLC*, 2018 WL 8014321 (E.D.N.Y. Oct. 15, 2018), nor *Daval Steel Products v. M/V Fakredine*, 951 F.2d 1357 (2d Cir. 1991) even involves the DMCA, and *Galgano* and *New Falls* also were not contempt decisions. *See* WT Response at 14.

[5] *See* 17 U.S.C. § 512(h)(1) ("A copyright owner or a person authorized to act on the owner's behalf may request the **clerk of any United States district court** to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection.") (emphasis added); ECF No. 1.

arises *after* the subpoena recipient has already proved "recalcitrant." *Id.* at 1365. It "serves to alert the offending party to the seriousness of its noncompliance" and functions as a "final warning that sanctions are imminent." *Id.* Applying those principles, in *Daval*, the Second Circuit affirmed a contempt sanction *after* a party had defied a court order flowing from a hearing on that party's motion to quash. *Id.* at 1364. *Cf. Roytlender v. D. Malek Realty, LLC*, 2023 WL 8473360, at *2 (E.D.N.Y. Mar. 24, 2023), *report and recommendation adopted*, 2023 WL 7986058 (E.D.N.Y. Nov. 17, 2023) (court so-ordered deposition subpoena only *after* granting subpoenaing party's motion to compel).

By contrast, as a matter of timing and logical necessity, an order directing the clerk to *issue* a DMCA subpoena could not possibly serve as a "final" warning about the recipient's purported earlier "recalcitrance," nor would it alert the recipient of the consequences of any earlier "noncompliance." That is especially true because the order here was *ex parte*: Cloudflare was not a party before the Court when Watch Tower sought its subpoena and the clerk issued it. Necessarily, any challenges to the subpoena, or concerns about compliance, could only be raised after the subpoena was issued. *See also* Fed. R. Civ. P. 45(g) Advisory Committee's Note to 2013 Amendment (confirming that an order compelling compliance with a subpoena is different from the subpoena itself because "the order might not require all the compliance sought by the subpoena"). *Cf. Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (courts may grant a subpoena application under 28 U.S.C. § 1782 *ex parte* because the respondent "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)").

*Third*, if an order issuing a DMCA subpoena were deemed an order compelling categorical compliance with the subpoena, that rule would moot most motions to quash. A service provider would always need to comply with a subpoena by the return date just to avoid contempt—even if

the subpoena were vulnerable to a user's motion to quash.  But because a motion to quash need only be filed by a subpoena's return date to be timely, *see, e.g.*, *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 516 (S.D.N.Y. 2022), a subpoena's compliance deadline would frequently precede a *ruling* on a motion to quash, meaning that producing responsive information by the deadline would moot the motion to quash.

In short, Watch Tower's proposed treatment of DMCA subpoenas makes no sense.  This Court should follow the settled consensus that contempt is unwarranted when a subpoena recipient has not violated a court order ordering compliance with the subpoena.  Because no such order has issued here, Watch Tower cannot show that Cloudflare defied it.

B.    Independently, Contempt Is Not Warranted Because Cloudflare Had an "Adequate Excuse" for Nonproduction by the Subpoena's Deadline.

Alternatively, and regardless of whether the subpoena or the order issuing it amounts to a relevant "court order" for contempt purposes, Cloudflare had an "adequate excuse" for holding its response to the subpoena: Doe's disclosure about their planned intervention.  *See* Fed. R. Civ. P. 45(g).

In analogous circumstances, courts have permitted a subpoena recipient to hold its production pending the resolution of a motion to quash.  In *In re Subpoena of Internet Subscribers of Cox Communications, LLC*, Cox Communications ("Cox") received a DMCA subpoena seeking to identify 29 of its subscribers.  148 F.4th 1056, 1060 (9th Cir. 2025).  Cox informed the affected subscribers and "request[ed] that they notify the court if they had any objection to Cox responding to the subpoena."  *Id.*  One subscriber did so, and Cox held its production about that subscriber while briefing ensued on their motion to quash.  *See id.*

Similarly, in *Sony Music Entertainment Inc. v. Does 1-40*, plaintiffs sought to identify subscribers of an ISP who had allegedly infringed plaintiffs' copyrights.  326 F. Supp. 2d 556, 559

6

(S.D.N.Y. 2004).  The Court ordered the ISP to notify the subscribers of the subpoena so they could move to quash, exactly as Cloudflare did here.  *See id.*  And if they moved to quash, the Court directed the ISP to "preserve the subpoenaed information in question pending resolution of any timely filed motions to quash," exactly as Cloudflare has done here.  *Id.  Cf. Malibu Media, LLC v. John Does 1-16*, 2012 WL 1681819, at *2 (D.D.C. Apr. 11, 2012) (in copyright infringement action, requiring that nonparty ISPs potentially subject to Rule 45 subpoenas notify their subscribers before producing information, to permit the subscribers "to object or intercede").

Those authorities make clear that Cloudflare had an "adequate excuse" for holding its production.  Cloudflare learned only two days before the compliance deadline that Doe had just retained counsel and asserted that they would face "significant adverse consequences" if their identity were revealed.  ECF No. 21-2.  Doe's counsel also confirmed that they would be "prepar[ing] a response" to the subpoena.  *Id.*  Had Cloudflare produced information that identified Doe, or materially aided Watch Tower in identifying Doe, before Doe could finalize their response, Cloudflare would have irreparably harmed Doe: Cloudflare would have denied Doe an opportunity to be heard on a motion to quash that, if granted, would have preserved Doe's anonymity.  *See* Cloudflare Br. at 10, 12; *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 877 (N.D. Cal. 2022) ("[I]t is not enough to say that a speaker could assert their right to anonymity after their identity has been revealed; at that point, the damage will have been done.  Fortunately, the [DMCA] does not compel (or permit) this result.").

Watch Tower complains that Doe's motion is untimely and that Doe's "intention" to file a motion to quash is "irrelevant."  WT Response at 11.  But "a number of courts in this Circuit have exercised their discretion to consider motions to quash that were not timely filed within the meaning of Rule 45 and applicable case law."  *YouTube*, 581 F. Supp. 3d at 516 (cleaned up)

(collecting cases).  The Court did exactly that in *YouTub*e, where the movant successfully quashed Watch Tower's DMCA subpoena.  *See id.* at 517.  *YouTube* and similar cases supported Cloudflare's reasonable belief that a court may excuse the untimeliness of Doe's motion to quash under the circumstances here, where Doe secured counsel only two days before the subpoena's compliance deadline.  *Contra* WT Response at 4 (accusing Cloudflare of making an "unsupported assumption" that the Court would grant additional time for Doe's potential motion to quash).

Watch Tower also claims it had no reason to believe Doe would promptly challenge the subpoena.  WT Response at 11.  The record refutes that suggestion: it shows that Doe's counsel diligently communicated with Watch Tower's counsel.  Shortly after Doe retained counsel, Doe's counsel contacted Watch Tower on January 13 to try to resolve the dispute amicably and request more time for their response.  *See* ECF No. 10-9 at 4.  Watch Tower responded on January 14, and Doe's counsel responded the next day.  *See id.* at 3-4.  Watch Tower failed to respond to Doe's counsel's January 15 email, prompting *Doe's counsel* to follow up on January 20.  *See id.* at 2. Doe's counsel advised that, if the parties could not resolve the matter, "we will ***promptly*** seek an informal conference with the court pursuant to Local Rule 37.2, prior to filing motions to quash both subpoenas and to consolidate the 512(h) proceedings."  *Id.*  (emphasis added).  Doe made good on that commitment the next day, shortly after Watch Tower brought its contempt motion.

## II.      Watch Tower's Remaining Arguments Are Meritless.

1.      The Court should excuse any waiver of Cloudflare's objections to the subpoena. Cloudflare, a nonparty, had a good faith basis to believe Doe had a colorable motion to quash.  It also promptly acknowledged receipt of the subpoena and advised Watch Tower of its position the day after learning that Doe planned to intervene.  *See* Cloudflare Br. 9-11.  More broadly, however, whether Cloudflare waived its objections, or whether that waiver should be excused, is immaterial to the only live issue as to Cloudflare: whether Watch Tower has shown by clear and convincing

evidence that Cloudflare failed to diligently comply with an unambiguous court order. As discussed, Watch Tower has not come close to doing so.

Regardless, Watch Tower's waiver arguments miss the mark. Watch Tower principally challenges the merits of Doe's fair use and First Amendment defenses. *See* WT Response at 17, 19-24. But those issues are best suited for resolution on Doe's motion to quash, should the Court permit it. Even so, Cloudflare had a reasonable basis to believe Doe may have a colorable motion to quash given that Doe advised that they would face significant adverse consequences if their identity were disclosed and that two courts had quashed Watch Tower's similar subpoenas on fair use grounds. That Doe may have a colorable motion to quash does not, as Watch Tower suggests (WT Response at 18), contradict Cloudflare's earlier statement to Doe that the subpoena was valid. Even validly issued DMCA subpoenas may be quashed for other reasons. *See, e.g.*, *YouTube*, 581 F. Supp. 3d at 523.

2.  Watch Tower's remaining arguments are grasping and should be rejected. Watch Tower challenges Cloudflare's handling of DMCA notices Watch Tower allegedly sent Cloudflare before serving the subpoena here. *See* WT Response at 18. But Cloudflare's handling of those notices is irrelevant to its response to the subpoena, which is the subject of Watch Tower's motion. Regardless, Watch Tower speculates that some of Cloudflare's communications to Watch Tower were "auto generated" (*id.*) but cites no authority establishing that, even if true, that somehow constitutes bad faith. Watch Tower also claims Cloudflare did not "remove the infringements" identified in the underlying DMCA notices. *Id.* at 6. But Cloudflare lacks that ability (*see* Suppl. Tortorella Decl. ¶ 4), as it previously advised Watch Tower (*see* ECF No. 10-4).

Watch Tower also suggests that Cloudflare's communications explaining its position on the subpoena were insufficient because they were not from Cloudflare's outside counsel. *See* WT Response at 19. But what matters is that Cloudflare was in contact with Watch Tower about its compliance and did not simply decline to engage. *See United States ex rel. Sasaki v. New York Univ. Med. Ctr.*, 2011 WL 13257693, at \*4 (S.D.N.Y. Aug. 23, 2011) (*"*[T]he record shows that Sasaki and the VA were in contact concerning the VA's compliance prior to the time the VA challenged the legal basis for the subpoena[.]"").

### III.  Plaintiff's Contempt Motion Violated Several Local Civil Rules.

*Violation of Local Civil Rule 37.2*. Watch Tower ignores this Court's Individual Rules in arguing that no pre-motion conference was required. True, Local Civil Rule 37.2 requires a pre-motion conference unless an individual judge's rules prescribe otherwise. But this Court's Rules do not. They expressly *adopt* Local Civil Rule 37.2 for discovery motions, as Cloudflare previously noted and Watch Tower fails to acknowledge. *See* Cloudflare Br. at 13. And Watch Tower does not dispute that its contempt motion is a discovery motion under Local Civil Rule 37.2. *See id.* at 14.

*Violation of Local Civil Rule 6.1(d)*. Watch Tower tacitly concedes it failed to justify the order-to-show-cause procedure by offering an after-the-fact explanation, missing from its counsel's declaration (*see* ECF No. 10), of the purported "urgency" surrounding Watch Tower's motion. Originally, its counsel's declaration had suggested a risk that <u>Cloudflare</u> may not preserve relevant information:

> ***Cloudflare holds information*** regarding the infringer and the infringing URLs. Service providers typically retain ***such information*** for a limited period of time. Once that information is deleted, there is no other means for Watch Tower to obtain the identity of the infringer and pursue a copyright infringement claim regarding the infringing website.

ECF No. 10 ¶ 12 (emphasis added).

But now, Watch Tower speculates about a different problem: that Cloudflare *might* provide only an IP address, that Watch Tower *might* then need to subpoena an ISP to identify Doe, and that, in turn, the ISP *might* not have retained the information sought.  *See* WT Response at 10-11.  That speculation is a far cry from the "clear and specific showing" required to justify the order-to-show-cause procedure.  Moreover, any emergency here was avoidable.  If Watch Tower's concerns were genuine, Watch Tower should have raised them to Cloudflare at any point in the month after serving its subpoena; requested an update from Cloudflare about its production, citing concerns about evidence loss; or attempted to engage with Cloudflare about what information Cloudflare had about Doe.  Watch Tower did none of those things before filing its motion, undercutting its belated and self-serving claims of urgency.

## **CONCLUSION**

The Court should deny entirely Watch Tower's motion for contempt and award Cloudflare its costs, disbursements, and reasonable attorneys' fees incurred in responding to the motion.


Dated: New York, New York                 Respectfully submitted,
      February 17, 2026


By: /s/ *Sudhir V. Rao*
    Sudhir V. Rao
    ZWILLGEN PLLC
    183 Madison Avenue, Suite 1601
    New York, NY 10016
    Telephone: (646) 362-5590
    Email: Sudhir.rao@zwillgen.com

    *Counsel for Cloudflare, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD-COUNT LIMIT

This document complies with the word-count limitation in Local Rule 7.1(c) and this Court's Individual Rule II.B because, excluding the parts of the document that are exempted, this document contains 3,493 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

/s/     *Sudhir V. Rao*
Sudhir V. Rao

12