**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: DMCA Section 512(h) Subpoena to
Cloudflare, Inc.

Case No.: 7:25-mc-00555-KMK

**MOVANT J. DOE'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ........................................................................................................1

ARGUMENT ................................................................................................................1

I.    DOE FACES DEVASTATING HARM IF THE SUBPOENA IS
GRANTED. ........................................................................................................1

II.   THE FIRST AMENDMENT REQUIRES SCRUTINY BEFORE
UNMASKING AN ANONYMOUS SPEAKER. ..........................................................3

III.  DOE'S ARCHIVE IS A FAIR USE OF WATCH TOWER'S
MATERIALS, INCLUDING THE *AWAKE!* MAGAZINE. ............................................4

    A.    The Record Before the Court Is Sufficient to Establish That Doe's Use
Was Fair. ...................................................................................................4

    B.    The Purpose and Character of Doe's Use Favors Fair Use. ...................................4

        1.    Rank Speculation Does Not Refute Evidence That Doe's Use Is
Noncommercial. ........................................................................................4

        2.    Doe's Use Is Transformative Because It Enables Critical
Research That Cannot Be Done Through Watch Tower's Official
Sources. ...................................................................................................5

        3.    "The Propriety of a Defendant's Conduct" Has Little to No
Bearing on Fair Use—and Doe's Conduct Was Proper. ................................6

    C.    The Nature of the Copyrighted Works Favors Fair Use or is Neutral. ...................6

    D.    Doe's Transformative Purposes Require Use of the Entirety of the
Works. .......................................................................................................7

    E.    Doe Has Caused No Market Harm, While Creating Significant Public
Benefits. ....................................................................................................7

IV.  THE REMAINING SONY/ARISTA FACTORS SUPPORT QUASHING
THE SUBPOENA. ................................................................................................9

    A.    Cloudflare's Policies Do Not Waive Doe's Expectation of Privacy or
First Amendment Interests. .........................................................................9

    B.    The Information is Not Necessary Because the Claim Cannot Proceed. ...............11

V.   DOE IS NOT SUBJECT TO DISCOVERY IN THE INSTANT CASE. .......................11

CONCLUSION.................................................................................................................12

CERTIFICATE OF COMPLIANCE.............................................................................13

ii

## TABLE OF AUTHORITIES

**Cases**

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*,
  82 F.4th 1262 (D.C. Cir. 2023)..................................................................................... 5

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ............................................................................... 3, 4, 10

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d. Cir. 2006) ......................................................................................... 7

*Brownmark Films, LLC v. Comedy Partners*,
  682 F.3d 687 (7th Cir. 2012) ........................................................................................ 4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994)....................................................................................................... 8

*Doe v. Marsh*,
  105 F.3d 106 (2d Cir. 1997) ....................................................................................... 10

*Gambale v. Deutsche Bank AG*,
  No. 02 Civ. 4791, 2003 WL 115221 (S.D.N.Y. Jan. 10, 2003)................................... 11

*Google LLC v. Oracle Am., Inc.*,
  593 U.S. 1 (2021)....................................................................................................... 6, 7

*In re DMCA § 512(h) Subpoena to Twitter, Inc.*,
  608 F. Supp. 3d 868 (N.D. Cal. 2022) .......................................................................... 3

*In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),*
  581 F. Supp. 3d 509 (S.D.N.Y. 2022) .............................................................. 3, 4, 6, 8

*In re DMCA Subpoena to Reddit, Inc.,*
  441 F. Supp. 3d 875 (N.D. Cal. 2020) .......................................................................... 3

*Johnson v. Zerbst,*
  304 U.S. 458 (1938)..................................................................................................... 10

*Jordane Enterprises, LLC v. John Does 1-5,*
  No. 21 CIV. 4538 (KPF), 2021 WL 2555809 (S.D.N.Y. Jun. 22, 2021) ................... 10

*Leg. Aid Socy. v. City of New York*,
  114 F. Supp. 2d 204 (S.D.N.Y. 2000) ......................................................................... 11

*NXIVM Corp. v. Ross Inst.*,
  364 F.3d 471 (2d Cir. 2004) .......................................................................................... 6

*Online Pol'y Grp. v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004)...................................................................... 5, 6

*Strike 3 Holdings, LLC v. Doe*,
  No. 3:22-CV-301-VLB, 2022 WL 1050341 (D. Conn. Mar. 10, 2022).................... 10

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014) ................................................................................. 5, 6

**Statutes**

17 U.S.C. § 107 ......................................................................................................... 11

17 U.S.C. § 512(h) ...................................................................................................... 3

**Other Authorities**

Cloudflare, Inc., *Privacy Policy* § 5 (Nov. 4, 2025) ..................................................... 9

JW.org, *How Do Jehovah's Witnesses Treat Those Who Used to Belong to Their Religion?* ....... 2

Nat'l Acads. of Scis., Eng'g, & Med., *Reproducibility and Replicability in Science*
   (Nat'l Acads. Press 2019) ........................................................................................ 7

**INTRODUCTION**

Movant J. Doe created an archive of Watch Tower materials to conduct research and engage in criticism in ways that are not possible using Watch Tower's official sources. Because these activities are an exercise of free speech on an issue of public concern, and because Doe faces serious harm if their identity is revealed to Watch Tower, careful First Amendment scrutiny is required. Because Doe's use of the materials, including the *Awake!* magazine identified in Watch Tower's subpoena to Cloudflare ("Subpoena"), was a non-infringing fair use, Watch Tower's underlying claim fails. Additionally, Doe has a substantial expectation of privacy in their identity and Watch Tower has failed to show the Subpoena is necessary to advance a legitimate claim. For these reasons, the Court should quash the Subpoena.

**ARGUMENT**

**I.    DOE FACES DEVASTATING HARM IF THE SUBPOENA IS GRANTED.**

Doe has a reasonable fear that disclosure of identifying information to Watch Tower will lead the Jehovah's Witnesses organization to retaliate against Doe for creating the website and participating in the "r/exjw" Reddit community. Declaration of J. Doe in Supp. Mot. to Quash Subpoena, ECF No. 30 ("Doe Decl.") ¶ 17; Mem. in Supp. Mot. to Quash Subpoena, ECF No. 29 ("Doe Mem.") 5. Watch Tower does not deny the likelihood of such retaliation, notwithstanding its argument that Watch Tower is a "distinct corporate entity." Watch Tower's Opp. to Mot. to Quash, ECF No. 33 ("Opp.") at 22.

If their identity is revealed, Doe stands to lose most of their significant personal relationships, including friends, family, and coworkers—a devastating harm. Doe Decl. ¶ 17; Doe Mem. 5–6. Watch Tower acknowledges that "disfellowshipping" is a genuine, common practice in the Jehovah's Witnesses community. *See* Opp. 4, 21–22. Watch Tower does not

1

contest that disfellowshipping means social exclusion. *Id*.[1] And while some ex-members may be permitted to attend religious services, if one is deemed to "actively promote wrong conduct," or "undermine" the congregation, members will "follow the Bible's command not to 'say a greeting' to such a person."[2]

Additionally, Watch Tower's sweeping assertion that "being 'disfellowshipped' does not cut off…family ties" is belied by numerous media reports, studies, and the church's own statements. *See* Decl. of Elizabeth Femia in Supp. Mot. Quash Subpoena to Cloudflare, Inc. ECF No. 31 ("Femia Decl.") ¶ 3.[3] Reports describe individuals shunned by close family members for decades, expelled from their homes by parents, or cut off from children. *Id*., Ex. A, ECF No. 31-1 at 34–36. While Watch Tower cites to a statement on its website that a person who is disfellowshipped and has a "spouse and young children" may continue to reside with them, the site does not say that family—even close or immediate family—are exempted from disfellowshipping. Opp. 4[4].

The First Amendment protects anonymous speech precisely because speakers may face retaliation and social ostracism for what they say—the exact harms at issue here. *See* Doe Mem. 16–17.

---

[1] JW.org, *How Do Jehovah's Witnesses Treat Those Who Used to Belong to Their Religion?*, https://www.jw.org/en/jehovahs-witnesses/faq/removed-from-the-congregation/ (last visited Mar. 27, 2026) ("Christians should 'stop keeping company' with someone who has been removed from the congregation, 'not even eating with such a man'" and members "do not socialize with someone who has been removed."); *see* Opp. 4.

[2] *Id*.

[3] In a Jehovah's Witnesses video, a disfellowshipped member describes being forced to leave her parents' home, losing contact for 15 years. Though it no longer appears on JW.org, the video is preserved at the Internet Archive. https://web.archive.org/web/20241008132645/https://www.jw.org/en/library/videos/#en/mediaite ms/pub-jwbcov_201605_3_VIDEO (last visited Mar. 28, 2026).

[4] JW.org, *supra* note 1.

Considering these harms does not require the Court to make an "impermissible ruling on internal religious practice." *Contra* Opp. 21. Doe has not asked the Court to grant relief from disfellowshipping itself, or to make any determination about the validity of that practice. Doe asks only that the Court consider the substantial harm Doe will likely face if Watch Tower is permitted to use legal process to pierce anonymity. Despite its well-known history of First Amendment religious freedom litigation, Watch Tower cites no authority for its extraordinary claim that a court, while overseeing discovery, cannot acknowledge the well-documented harms of an extreme form of social ostracism.

## II.    THE FIRST AMENDMENT REQUIRES SCRUTINY BEFORE UNMASKING AN ANONYMOUS SPEAKER.

Because the First Amendment affords protection to anonymous speech, courts must apply the *Sony/Arista* test or similar scrutiny before a party may use legal process to unmask an anonymous speaker, regardless of the underlying claim or the nature of the legal process. Doe Mem. 7–9. Contrary to Watch Tower's argument, Opp. 5–7, neither DMCA subpoenas under 17 U.S.C. § 512(h) nor underlying allegations of copyright infringement are immune from constitutional scrutiny. *See In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.),* 581 F. Supp. 3d 509, 515 (S.D.N.Y. 2022); *In re DMCA Subpoena to Reddit, Inc.,* 441 F. Supp. 3d 875, 883 (N.D. Cal. 2020); *In re DMCA § 512(h) Subpoena to Twitter, Inc.,* 608 F. Supp. 3d 868, 877 (N.D. Cal. 2022). Watch Tower's argument that the *Sony/Arista* test is inapplicable to DMCA subpoenas ignores these cases and others in which courts have applied it (and similar tests) without difficulty. *See In re DMCA Section 512(h) Subpoena to YouTube*, 581 F. Supp. 3d

at 517 ("the Court now proceeds to analyze the *Arista* factors based on the record before it.").

Watch Tower does not propose any alternative test that protects Doe's First Amendment rights.[5]

### III.   DOE'S ARCHIVE IS A FAIR USE OF WATCH TOWER'S MATERIALS, INCLUDING THE *AWAKE!* MAGAZINE.

#### A.   The Record Before the Court Is Sufficient to Establish That Doe's Use Was Fair.

Courts consider fair use on motions to quash. *See, e.g.*, *In re DMCA Section 512(h) Subpoena to YouTube*, 581 F. Supp. 3d at 517. In fact, fair use can even be established at the pleading stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012). Contrary to Watch Tower's argument, Opp. 7–8, the Second Circuit has never held that fair use cannot be considered in this procedural posture. In *Arista Records*, it applied the four fair use factors to a much thinner record and concluded on that record that fair use did not apply. *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 124 (2d Cir. 2010).

#### B.   The Purpose and Character of Doe's Use Favors Fair Use.

Doe's archive of Watch Tower materials is a noncommercial, transformative use, filling a need that Watch Tower's official sources do not address. These conclusions are supported by the record and Watch Tower does not meaningfully refute them.

##### 1.   Rank Speculation Does Not Refute Evidence That Doe's Use Is Noncommercial.

The noncommercial nature of Doe's archive is shown by Doe's declaration, their sharing of the archive with like-minded amateur researchers in the "r/exjw" forum, and by the rules of that forum that ban commercial activity. Doe Decl. ¶ 11; Second Decl. of Elizabeth Femia in

---

[5] Watch Tower's attempt to shoehorn a jurisdictional argument into its *Sony/Arista* analysis should also be rejected. Doe has not submitted to personal jurisdiction in New York, and an opposition to a motion to quash in a proceeding to which Doe is not a party is not the proper avenue for litigating that claim.

Supp. Mot. to Quash Subpoena ("Femia Second Decl.") Ex. A; Ex. B at 5. Watch Tower cites no evidence to the contrary. It only speculates, without basis, that some unidentified commercial purpose might exist. Opp. 11.

### 2.    Doe's Use Is Transformative Because It Enables Critical Research That Cannot Be Done Through Watch Tower's Official Sources.

Doe's use is transformative because it furthers amateur research, education, and criticism that Watch Tower itself seeks to suppress. Alteration of an original work is not required for a use to be transformative. An "altered purpose or context of the work, as evidenced by surrounding commentary or criticism" is transformative. *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 84 (2d Cir. 2014). In fact, reproducing an entire archive of documents verbatim online in a noncommercial context has been found to be fair use. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 82 F.4th 1262, 1272 (D.C. Cir. 2023); *Online Pol'y Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1203 (N.D. Cal. 2004).

Doe provided their archive and analytical tools to the "r/exjw" forum on Reddit, and it was there that Doe and others shared research and posted criticism. Femia Second Decl. Ex. A. That this dialogue—speech on matters of public concern—did not take place on Doe's own website is immaterial to the purpose and character of the use. *See Diebold*, 337 F. Supp. 2d at 1203 (posting archive of corporate documents was fair use where archive enabled commentary by journalists on another site); *contra* Opp. 12.

In addition, presenting a complete, searchable, and stable record of public statements by the Jehovah's Witnesses organization over time is transformative because Watch Tower itself does not do so. While Watch Tower cites to a "Beliefs Clarified" page on its website that lists changes in doctrine, Opp. 16, that page does not include instances where the organization altered or censored its own historical record after publication. Doe Decl. ¶ 4; Femia Second Decl. Ex. C.

5

Amateur researchers in Doe's online community were only able to discover and document these practices because of Doe's archive and other unofficial sources.

The 2022 *Awake!* magazine is one of the publications that Doe's archive makes searchable and stable. Its subject matter—"ways to maintain . . . spiritual stability during difficult times"—implicates religious doctrine. Opp. 3. And Watch Tower alters issues of *Awake!* after publication. A researcher in Doe's community identified such an alteration in an issue of *Awake!*, which they concluded was done to mislead readers about the relationship between religious beliefs and scientific theory. Femia Second Decl. Ex. C. at 4–5.

### 3. "The Propriety of a Defendant's Conduct" Has Little to No Bearing on Fair Use—and Doe's Conduct Was Proper.

As stated in the opinion Watch Tower relies on, "bad faith is not to be weighed very heavily within the first fair use factor and cannot be made central to fair use analysis." *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 479 (2d Cir. 2004). The Supreme Court subsequently expressed "skepticism about whether bad faith has any role in a fair use analysis," noting that "[c]opyright is not a privilege reserved for the well-behaved." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 32 (2021) (citations omitted); *contra* Opp. 13–14. In any event, Watch Tower has not shown that Doe acted in bad faith. Posting newsworthy documents that are not otherwise available to the public evidences a transformative purpose and does not defeat fair use. *Swatch Grp*, 756 F.3d at 84; *Diebold*, 337 F. Supp. 2d at 1203. And Doe allegedly breaching the JW.org website terms of service by downloading is immaterial where the use is transformative. *See In re DMCA Section 512(h) Subpoena to YouTube*, 581 F. Supp. 3d at 521.

### C. The Nature of the Copyrighted Works Favors Fair Use or is Neutral.

Watch Tower does not argue that the second factor weighs *against* a finding of fair use, only that it does not weigh in favor. Opp. 15. Many of the works in Doe's archive were factual in

nature, favoring fair use. Doe Mem. 12. For others, this factor is neutral, given Doe's transformative purpose. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d. Cir. 2006).

### D.    Doe's Transformative Purposes Require Use of the Entirety of the Works.

Doe's transformative purpose could not have been achieved without providing access to Doe's archive, because unverifiable claims are less credible than claims based on disclosed evidence.[6] Selective disclosure is especially inadequate when an entity insists that its own official record—which it is known to have altered repeatedly—should be the public's only source.

Providing access to the archive was also necessary to advance Doe's purpose of enabling other researchers to perform their own analyses. Given the consequences faced by members of the Jehovah's Witnesses who question leadership and doctrine, it is reasonable to expect that members would be deterred from asking for access to official records and Doe would face further risks of de-anonymization in such interactions.

Doe and others have been able to do credible and valuable research because Doe's archive included a comprehensive historical record. Because the amount of the works used was appropriate to Doe's transformative purpose, this factor does not weigh against fair use.

### E.    Doe Has Caused No Market Harm, While Creating Significant Public Benefits.

The fourth fair use factor "must take into account the public benefits the copying will likely produce" and how those benefits "compare[] with dollar amounts likely lost." *Google*, 593 U.S. at 35–36.

---

[6] Nat'l Acads. of Scis., Eng'g, & Med., *Reproducibility and Replicability in Science* (Nat'l Acads. Press 2019) at 42, https://www.nationalacademies.org/read/25303 (noting concerns when data underlying an analysis is unavailable or subject to selective, rather than full, disclosure).

Watch Tower does not allege it lost a single penny as a result of Doe's use. Instead, it points to a Reddit comment expressing a desire for Doe's site to be well-ranked in Google's search results. Watch Tower does not and cannot identify any authority for how this desire constitutes harm to a cognizable market for its works, even if it had come to pass (which Watch Tower does not allege). Ironically, Watch Tower's lead citation is to an opinion quashing one of its earlier attempts to abuse the DMCA subpoena process against a critic. *In re DMCA Section 512(h) Subpoena to YouTube*, 581 F. Supp. 3d at 523. There, the court found the fourth factor strongly favored fair use because the transformative use could not supplant demand for Watch Tower's works. *Id.*

There simply is no market to harm for works that Watch Tower makes freely available, including the *Awake!* Magazine at issue here. The fact that Watch Tower purportedly offers licenses to some of its works also does not represent a market. First, there is no need to license a fair use, particularly where that use is critical research and the copyright owner may deny the license based on objections to the user's message. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) ("[T]he unlikelihood that creators of imaginative works will license critical reviews or lampoons of their own productions removes such uses from the very notion of a potential licensing market."). Second, Watch Tower does not allege that it charges money for licenses.

This case concerns Watch Tower's ability to control discussion of the historical record, not interference with copyright's incentives to create. When comparing the nonexistent market harm to the real public benefit of generating new knowledge about the history of the Jehovah's Witnesses, there is no contest: this factor favors fair use.

IV.     **THE REMAINING SONY/ARISTA FACTORS SUPPORT QUASHING THE SUBPOENA.**

A.     **Cloudflare's Policies Do Not Waive Doe's Expectation of Privacy or First Amendment Interests.**

Doe has not forfeited their expectation of privacy in their identity by accepting Cloudflare's Terms of Use or Privacy Policy. These policies contain standard clauses reserving Cloudflare's right to disclose information to comply with a subpoena or other legal process.[7] A user may reasonably expect Cloudflare will share their personal information if "required," once a subpoena is determined valid and lawful. But whether a subpoena is lawful—and thus whether Cloudflare is "required" to disclose—is necessarily dependent on the resolution of a valid legal challenge to that subpoena. By accepting Cloudflare's terms, Doe did not reasonably expect to be conceding the sufficiency of any future subpoena, waiving their right to object, or surrendering their constitutional interest in anonymity. To the contrary, Doe had a heightened expectation that Cloudflare would keep their identity private. Doe specifically sought out Cloudflare's services to anonymously share their archive, research, and findings while protecting against identity disclosure. Doe Decl. ¶ 8.

Cloudflare's own policies and conduct confirm this understanding. As Cloudflare explained to Watch Tower in response to the Subpoena, "It is Cloudflare's policy to notify users of requests for their information prior to disclosure… ." Decl. of Melanie Baptiste-Jean Noel in Supp. Mot. for Order to Show Cause, Ex. G, ECF No. 10-7, at 2. Upon receiving Watch Tower's subpoena, Cloudflare did not simply turn over Doe's identifying information, as one would expect if its terms extinguished Doe's expectation of privacy. Instead, Cloudflare withheld production pending the outcome of this motion. Cloudflare, Inc's Opp. to Watch Tower's Mot.

---

[7] Cloudflare, Inc., *Privacy Policy* § 5 (Nov. 4, 2025), https://www.cloudflare.com/privacypolicy/#5-information-sharing.

for Order to Show Cause, ECF No. 20, at 1. This demonstrates that *Cloudflare itself* does not read its terms as eliminating users' interest in remaining anonymous.[8]

Moreover, if standard legal process clauses could defeat a user's expectation of privacy in their identity, the fifth *Sony/Arista* factor would become virtually meaningless for internet users. Policies like this are near-universal among online services and platforms, which have been subpoena subjects in countless cases applying the *Sony/Arista* factors. Most of these decisions do not consider terms of use or privacy policies in their expectation of privacy analysis. *See e.g.*, *Arista Records*, 604 F.3d at 124; *Strike 3 Holdings, LLC v. Doe*, No. 3:22-CV-301-VLB, 2022 WL 1050341, at *3 (D. Conn. Mar. 10, 2022); *Jordane Enterprises, LLC v. John Does 1-5*, No. 21 CIV. 4538 (KPF), 2021 WL 2555809, at *1 (S.D.N.Y. Jun. 22, 2021). Watch Tower's reading would mean essentially no internet user possesses a cognizable privacy interest in their identity when weighing First Amendment rights against an unmasking subpoena. That cannot be correct.

Finally, Doe has a strong First Amendment interest in maintaining anonymity that cannot be so easily waived by boilerplate clauses in a Privacy Policy or Terms of Use. A valid waiver of a fundamental right requires "an intentional relinquishment or abandonment of a known right or privilege." *Doe v. Marsh,* 105 F.3d 106, 111 (2d Cir. 1997) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). It must be undertaken "voluntarily, knowingly, and intelligently." *Leg. Aid*

---

[8] Watch Tower's "illegal activities" clause argument is even less persuasive. This clause permits information disclosure only upon a "good-faith belief sharing is necessary" to prevent or investigate illegal activities. *See* Privacy Policy § 5, *supra* note 7. But Doe had no expectation that they engaged in "illegal activities" that would trigger disclosure. Notably, Cloudflare is withholding information pending the resolution of this motion, and Doe has thus reasonably assumed Cloudflare does not believe "sharing is necessary" unless the Court denies the motion. Nor is it clear that Watch Tower's interpretation is even correct. Watch Tower attempts to define "illegal activities" in the Privacy Policy by using the definition of "illegal or harmful content" in the Terms of Use. Opp. 25. But those are not the same terms. Finally, Doe's archive did not "infringe on another person's intellectual property rights" because it constitutes a lawful fair use. *See supra* Part III.

10

*Socy. v. City of New York*, 114 F. Supp. 2d 204, 226 (S.D.N.Y. 2000) (internal cites omitted). Here, nothing in Cloudflare's policies explicitly informed Doe that accepting would voluntarily relinquish their First Amendment right to anonymity.

### B.    The Information is Not Necessary Because the Claim Cannot Proceed.

The subpoenaed information is not necessary to advance Watch Tower's claim because Doe's website constitutes a fair use and the underlying copyright claim cannot prevail. *See* 17 U.S.C. § 107 (fair use of a copyrighted work "is not an infringement of copyright").

Additionally, Doe has already removed the allegedly infringing content from the website. Watch Tower points to a separate archive, Opp. 19, but Doe does not operate that website, has no relationship with its owner, and exercises no control over its content. Doe Decl. ¶ 10. Compelling disclosure of Doe's identity will not take that site offline, and Watch Tower offers no theory for why it would.

The *Sony/Arista* factors thus weigh decisively in Doe's favor. Watch Tower's failure to establish the first factor—requiring a prima facie claim of actionable harm—is independently sufficient to quash the subpoena. *See* Doe Mem. 9–10. The remaining factors reinforce that result.

## V.    DOE IS NOT SUBJECT TO DISCOVERY IN THE INSTANT CASE.

There is no legal basis for Watch Tower's demand that "the court should force Doe to submit a sworn affidavit disclosing [their] identity." Opp. 23. This matter concerns a subpoena to Cloudflare, not Doe. The case Watch Tower cites, *Gambale v. Deutsche Bank AG*, No. 02 Civ. 4791, 2003 WL 115221, at *2 (S.D.N.Y. Jan. 10, 2003), concerned a discovery order to a plaintiff, and does not authorize the extraordinary relief against a nonparty that Watch Tower seeks here.

**CONCLUSION**

Because of the serious harm to Doe's First Amendment rights that will occur if their

identity is revealed to Watch Tower, and because the underlying copyright claim fails, this Court

should quash the Subpoena.


Dated: March 30, 2026                          Respectfully submitted,

                                        /s/ Mitchell L. Stoltz
                                       Mitchell L. Stoltz

                                       Elizabeth Femia *(admitted pro hac vice)*
                                       ELECTRONIC FRONTIER FOUNDATION
                                       815 Eddy Street
                                       San Francisco, CA 94109
                                       Telephone: (415) 436-9333
                                       Facsimile: (415) 436-9993
                                       mitch@eff.org
                                       lfemia@eff.org

                                       *Attorneys for J. Doe*

12

## CERTIFICATE OF COMPLIANCE

This document complies with the word-count limitation in Local Rule 7.1(c) and this Court's Individual Rule IIB because this document contains 3,491 words, excluding the parts of the document that are exempted. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft 365) used to prepare the document.

Dated:   March 30, 2026                    */s/ Mitchell L. Stoltz*
                                           Mitchell L. Stoltz