ELECTRONIC FRONTIER FOUNDATION

August 11, 2026

**VIA ECF**

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
Charles L. Brieant Jr.
United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

**Re:** *In re: DMCA Section 512(h) Subpoena to Cloudflare, Inc.*
Case number 7:25-mc-00555-KMK

Dear Judge Karas,

We represent J. Doe in connection with the above-captioned subpoena seeking their identifying information. We write pursuant to the Court's Opinion and Order of July 21, 2026, ECF No. 45 (the "Order"), which directed Doe to file a letter stating Doe's position on whether a protective order is appropriate and what form it should take. Pursuant to the Order, counsel for Doe conferred with counsel for Watch Tower Bible and Tract Society of Pennsylvania ("Watch Tower") on August 4, 2026. The parties were unable to reach agreement and Doe therefore respectfully submits this letter to the Court.

Doe's position is that a protective order is appropriate and that it must contain two features, identified below. A proposed protective order containing these features is attached hereto as **Exhibit 1**.

**First, Doe's identifying information must be designated attorneys' eyes only ("AEO"), available to Watch Tower's counsel of record but not to Watch Tower itself absent Doe's consent or further order of the Court.** Without an AEO designation, any protective order will fail to safeguard the precise anonymity interest at stake, because disclosure to Watch Tower itself is Doe's primary concern. Doe reasonably fears that such disclosure will lead the Jehovah's Witnesses organization to retaliate against Doe for creating the website and participating in the "r/exjw" Reddit community. Declaration of J. Doe in Supp. Mot. to Quash Subpoena, ECF No. 30 ("Doe Decl.") ¶ 17; Mem. in Supp. Mot. to Quash Subpoena, ECF No. 29 ("Doe Mem.") 5. The harm materializes the moment Watch Tower learns who Doe is, and that harm, once done, cannot be undone by a subsequent favorable ruling.

An AEO designation is an established tool for limiting disclosure of sensitive information while permitting counsel to litigate a case. Indeed, a court in a sister circuit recommended an AEO restriction in a similar proceeding brought by Watch Tower, also seeking the identity of an anonymous speaker associated with the Jehovah's Witnesses community through a § 512(h) subpoena.[1] *In re DMCA Subpoena to Reddit, Inc.*, 383 F. Supp. 3d 900, 916 (N.D. Cal. 2019); *see also Benitez v. U.S. Dep't of Homeland Sec.*, No. 26-CV-2082, 2026 WL 136243, at *9 (E.D.N.Y. May 15, 2026) (considering the *Sealed Plaintiff* factors and finding an AEO restriction appropriate); *Lively v. Wayfarer Studios LLC*, No. 24-CV-10049, 2025 WL 815364, at *1–2 (S.D.N.Y. Mar. 13, 2025) (entering protective order containing an AEO).

During the parties' August 4 conference, Watch Tower took the position that the Order already permits Doe's identity to be disclosed to Watch Tower itself, leaving open only whether Doe's identity may be publicly disclosed on the docket in this or a subsequent proceeding. Doe believes this misreads the Order. Although the Court denied Doe's motion to quash, it separately considered whether a protective order should govern disclosure of Doe's identity, recognized its authority under Rule 26(c) to "forbid[] . . . disclosure" of information, and directed the parties to address "what form" a protective order should take. Order 25–27. The Court likewise noted that disclosure "to [Petitioner's] *counsel* is a necessary prerequisite to the litigation being advanced." *Id.* 11 (emphasis added). An AEO order therefore would not disturb the Court's ruling.

Nor would AEO treatment deprive Watch Tower of the relief the Court ordered. Watch Tower's counsel would receive Doe's identifying information and could use it to investigate Watch Tower's claims, assess jurisdiction, serve process, conduct discovery, retain experts or investigators, and prosecute any subsequent infringement action. If Watch Tower later identifies a concrete litigation need for a particular Watch Tower representative to know Doe's identity, Doe's proposed order permits Watch Tower to seek Doe's consent or modification of the order on a particularized showing of need. This narrowly tailored approach protects Doe against the harm at issue without preventing Watch Tower from pursuing its claims.

**<u>Second</u>, the protective order must bind any person to whom Doe's identifying information is later disclosed, in this proceeding or in any directly related copyright action, including a person located outside the United States.** Doe is not a resident of the United States, Doe Decl. ¶ 13, and their internet service provider is located outside of the United States. Accordingly, the protective order should permit Watch Tower's counsel to disclose Doe's identifying information to an otherwise authorized third party only on a need-to-know basis, after counsel determines that the disclosure is reasonably necessary and the recipient signs an agreement to be bound by the protective order. For a recipient located outside the United States, the proposed protective order also conditions disclosure on the recipient's written agreement to submit to this Court's jurisdiction solely for purposes of enforcing the protective order.

[1] On de novo review the subpoena was instead quashed in full on fair use grounds. *In re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 887 (N.D. Cal. 2020).


815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

Courts have approved similar mechanisms to protect confidential information disclosed for use abroad. *See In re Ex Parte Application of SBK Art LLC*, No. 24-MC-00147 (PAE-RFT), ECF No. 81, at 6 (S.D.N.Y. Apr. 17, 2026) (requiring recipients of confidential information intended for use in foreign proceedings to execute an agreement to be bound by protective order and submit to SDNY jurisdiction for disputes arising under the order); *In re Application of Deposit Guarantee Fund of Ukraine Pursuant to 28 U.S.C. § 1782*, No. 22-MC-00293 (RA-RWL), ECF No. 11, at 2–3, 6 (S.D.N.Y. Feb. 15, 2023) (permitting disclosure to participants in Ukrainian proceedings and requiring recipients to execute an agreement to be bound by protective order); *see also EON Corp. IP Holdings, LLC v. Landis+Gyr Inc.*, No. 6:11-CV-317, ECF No. 154, at 4–5 (E.D. Tex. June 12, 2012) (requiring persons outside the United States to agree in writing to abide by the protective order and submit in writing to the court's jurisdiction before receiving protected material).

This approach permits Watch Tower's counsel to use foreign investigators, experts, process servers, or other necessary service providers without leaving Doe's identity unprotected once it crosses a national border.

Moreover, the balance of factors set out in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189–90 (2d Cir. 2008), weighs strongly in favor of Doe's proposal, particularly because a narrowly tailored AEO designation would mitigate any prejudice to Watch Tower. The majority of the *Sealed Plaintiff* factors favor Doe's proposed protective order, and those that do not are either neutral or have diminished significance under the circumstances. We consider each factor below.

1. **The litigation involves matters that are highly sensitive and of a personal nature.**

Disclosure of Doe's identity would expose not only Doe's religious affiliation, but also Doe's private doubts about the faith Doe still holds. Order 3. Courts have long treated religious belief as among the most private matters a litigant can be compelled to expose. *See Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) ("Religion is perhaps the quintessentially private matter."); *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming order allowing pseudonyms where the suit "forces Plaintiffs to reveal their beliefs about [religion,] a particularly sensitive topic that could subject them to considerable harassment"). So fundamental is this privacy interest that "implicit in the First Amendment's guarantee of religious freedom [is] the right to choose whether or not to disclose one's religious affiliation." *Johnson v. Washington Times Corp.*, 208 F.R.D. 16, 17 (D.D.C. 2002).

Courts in this Circuit have applied the same principle under *Sealed Plaintiff*. *See Does 1-2 v. Hochul*, No. 21-CV-5067, 2022 WL 836990, at *5 (E.D.N.Y. Mar. 18, 2022) (first factor tipped in plaintiffs' favor given "the unique sensitivities that exist...particularly as to Plaintiffs' religious convictions"); *see also Doe v. City Univ. of N.Y.*, No. 21-CV-9544, 2021 WL 5644642, at *3 (S.D.N.Y. Dec. 1, 2021) ("[T]he fact that plaintiff has put his religious beliefs at issue in this case means this factor weighs in favor of plaintiff proceeding anonymously.").



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

Here, disclosure would identify Doe as the person who built and published an archive and analytic tools designed to show "how Jehovah's Witnesses' teachings have changed over time," and who posts to the "r/exjw" forum under a pseudonym. Order 3. Disclosure would therefore reveal Doe's religious affiliation and "questions, doubts[,] and concerns" about "aspects of the community's teachings and practices." *Id.* 2. This factor thus counsels in favor of Doe's proposed protective order.

**2. Identification poses a significant risk of retaliatory physical or mental harm to Doe.**

Doe faces a serious risk of mental and psychological harm if their identity is disclosed to Watch Tower. Psychological harm is a cognizable injury that counsels in favor of proceeding anonymously. *See Doe v. 2001 Arthur LLC*, No. 24-CV-9542 (RA), 2026 WL 237513, at *3 (S.D.N.Y. Jan. 29, 2026) (granting motion to proceed anonymously where disclosure would reveal HIV status and thus "cause significant emotional and psychological harm"). Notably, courts in this Circuit have specifically credited "emotional and psychological harm…in light of [] *ties to a very tight-knit religious community*" when considering the need to proceed anonymously. *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 197 (E.D.N.Y. 2006) (emphasis added).

If Doe's identity is revealed and connected to the archive and comments made in the "r/exjw" forum, Doe stands to be "disfellowshipped" and lose most of their significant personal relationships, including friends, family, and coworkers—a devastating harm. Doe Decl. ¶ 17; Doe Mem. 5–6. Doe has personal knowledge of people in Doe's community who have been shunned in this way. Doe Decl. ¶ 2. Nor is this harm speculative: Watch Tower acknowledges that "disfellowshipping" is a genuine, common practice in the Jehovah's Witnesses community. *See* Watch Tower's Opp. to Mot. to Quash, ECF No. 33 ("Opp.") 4, 21–22.

Accounts in the record attest to the psychological harm and social isolation that comes from "disfellowshipping." *See* Decl. of Elizabeth Femia in Supp. Mot. to Quash Subpoena to Cloudflare, Inc., ECF No. 31, ¶ 3. Reports describe individuals shunned by close family members for decades, expelled from their homes by parents, or cut off from children. *Id.*, Ex. A, ECF No. 31-1 at 34–36. They detail the long-term and profound mental suffering that ex-adherents feel when this happens. *See id.*

Because Doe has been a member of this community their whole life, the potential consequences of disclosure are particularly serious, since the pain of total social exclusion would be overwhelming, as would the negative effects on their physical and mental wellbeing. Doe Decl. ¶ 17. These harms flow from disclosure to Watch Tower, not just from publication of Doe's name on the public docket. This factor thus counsels in favor of Doe's proposed protective order.



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

**3. Other severe harms would be incurred as a result of disclosure.**

Disclosure of Doe's identity to Watch Tower or to the public would cause other harms, including professional ostracism, Doe Decl. ¶ 17, and a significant chilling effect on speech. Doe attests that had they known their name would be revealed to Watch Tower, Doe "would not have shared truthful information regarding Jehovah's Witnesses doctrine or discussed that information in an online forum," and that Doe's speech "will be chilled" if their identity is released to Watch Tower. Doe Decl. ¶ 17.

The chill would extend beyond Doe to others engaged in similar anonymous inquiry and criticism. Doe shared the archive and tools with a community of others engaged in similar inquiries. Order 3. Members of that community will be deterred from expressing critical or questioning opinions of the Jehovah's Witnesses church if they see their identity may be disclosed directly to Watch Tower. *See Art of Living Found. v. Does 1-10*, No. 10-CV-05022, 2011 WL 5444622, at *6 (N.D. Cal. Nov. 9, 2011) (recognizing disclosure would have impermissible chilling effect on blogger and others because suit involved blogger's critical comments on "political, religious, or literary" material); *Highfields Cap. Mgmt., LP v. Doe*, 385 F. Supp. 2d 969, 980–81 (N.D. Cal. 2005) ("When word gets out that the price tag of effective sardonic speech [includes disclosure of the speaker's identity], that speech likely will disappear.").

When disclosure of an individual's identity could result in a "chilling effect," this "weighs in favor of permitting [a party] to continue anonymously." *Hochul*, 2022 WL 836990, at *7 (discussing the third *Sealed Plaintiff* factor); *see also Doe v. Colgate Univ.*, No. 15-CV-1069 (LEK) (DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016). This factor therefore counsels in favor of Doe's proposed protective order.

**4. Doe is particularly vulnerable to the possible harms of disclosure.**

Even though Doe's vulnerability is not based on age, Doe is particularly vulnerable to the harms of disclosure because Doe remains active within the Jehovah's Witnesses community and "most of [Doe's] friends, family members, and coworkers today are Jehovah's Witnesses." Order 2. Doe's lifelong ties to that community make Doe particularly susceptible to the consequences they reasonably fear if Watch Tower learns their identity. Unlike a person with only an attenuated connection to the community, Doe cannot easily avoid the loss of relationships central to their daily life. This factor favors Doe's proposed protective order.

**5. Although a dispute between private parties typically weighs against anonymity, Watch Tower is not an "ordinary private party" and the concern underlying this factor has lower significance here.**

The fifth *Sealed Plaintiff* factor asks whether the challenged conduct is governmental or private. 537 F.3d at 190. Because both parties here are private entities, this factor nominally weighs against anonymity. Courts treat suits involving private parties as weighing against anonymity because private defendants are more likely to suffer reputational injury from



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

unanswerable anonymous accusations. *See N. Jersey Media Grp. Inc. v. Doe Nos. 1-5*, No. 12 Civ. 6152, 2012 WL 5899331, at *7 (S.D.N.Y. Nov. 26, 2012) (suits against the government "involve no injury to the Government's 'reputation,'" whereas "the mere filing of a civil action against other private parties may cause damage to their good names and reputation"); *Doe v. DNA Diagnostics Ctr. LLC*, No. 1:25-CV-2878-GHW, 2025 WL 1725449, at *6 (S.D.N.Y. June 18, 2025) (same).

That concern, however, has limited force here. Doe did not initiate litigation anonymously accusing Watch Tower of misconduct. And although Doe asks that the protective order continue to govern the identifying information in any directly related infringement action, such an action would be brought by Watch Tower, with Doe in the position of defending against Watch Tower's claims. The reputational asymmetry ordinarily underlying the fifth factor is therefore substantially diminished.

Additionally, a major religious entity like Watch Tower is not an "ordinary private party," *Kolko*, 242 F.R.D. at 195, because Watch Tower plays a substantial public role in the Jehovah's Witnesses community, including by "supporting the global bible education work of the Jehovah's Witnesses." *See* Decl. of Melanie Baptiste-Jean Noel, ECF No. 34, ¶ 16. Courts have found diminished significance in the fifth *Sealed Plaintiff* factor where a private entity performs a substantial community function, like education. *See Kolko*, 242 F.R.D. at 195 (finding the same for a Jewish educational institution due to its "public service" function and "significant role[]" in the community); *Doe v. Fashion Inst. of Tech.*, No. 25 CIV. 950 (JPC), 2025 WL 384562, at *3 (S.D.N.Y. Feb. 4, 2025) (finding the same for a private university).

Accordingly, although the fifth factor nominally weighs against Doe, it should receive limited weight in the overall balance.

**6. Any prejudice to Watch Tower is mitigated by the proposed AEO protective order.**

The proposed protective order permits Watch Tower to fully litigate its claims. Watch Tower has identified several reasons why it needs Doe's identity: to "serve process, fully assess Doe's contacts with the United States for purposes of establishing personal jurisdiction, or enforce any injunction or any judgment against Doe." Opp. 19. The proposed protective order permits Watch Tower's counsel of record to use Doe's identifying information for each of those purposes. It also permits counsel to conduct discovery, investigate the claims, retain experts or investigators, and disclose the information to authorized third parties on a need-to-know basis subject to the order. Any residual burden is slight where the opposing party has access to the identifying information. *See Doe v. Townes*, No. 19CV8034ALCOTW, 2020 WL 2395159, at *6 (S.D.N.Y. May 12, 2020) ("Defendant, because he knows Plaintiff's name, is not greatly prejudiced in his ability to conduct discovery.").

Watch Tower has not identified another reason Doe's identity must be disclosed to Watch Tower itself. And indeed, it cannot. By law, a § 512(h) subpoena issues only upon a sworn



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

declaration that the identifying information sought "will only be used for the purpose of protecting rights under this title." 17 U.S.C. § 512(h)(2)(C).

Nor has Watch Tower named a specific task that requires disclosure of Doe's identity to a client representative rather than to counsel or an authorized third party. If counsel later identifies a concrete need for a particular Watch Tower representative to know Doe's identity, Watch Tower may seek Doe's consent or ask the Court to modify the protective order upon a particularized showing of need. That mechanism responds directly to the sixth factor's instruction to consider whether prejudice differs at different stages of litigation and whether it can be mitigated by the Court. *See Sealed Plaintiff*, 537 F.3d at 190.

Since the proposed AEO protective order protects Doe without materially impairing Watch Tower's ability to pursue its claims, this factor counsels in favor of Doe's proposed protective order.

**7. Doe's identity has so far been kept confidential.**

Doe published the archive and tools "anonymously on the internet," posted under a pseudonym, and obtained Cloudflare's reverse proxy services specifically to "protect against disclosure of [Doe's] identity as the owner" of the website. Order 3–4. Doe has appeared in this proceeding as J. Doe throughout, and Doe's identifying information has not been produced. This is not a case in which Doe seeks to restore confidentiality after voluntarily revealing their identity. Because Doe has consistently and affirmatively taken steps to preserve anonymity both before and throughout this proceeding, this factor counsels in favor of Doe's proposed protective order.

**8. The public's interest in the litigation is not furthered by disclosing Doe's identity.**

The relevant question under the eighth factor is whether the public's interest in the litigation is furthered by requiring disclosure of Doe's identity. It is not. The public can evaluate Watch Tower's infringement allegations, Doe's defenses, and the Court's rulings without knowing Doe's legal name.

Judges in this District have regularly recognized in anonymous copyright matters that "the public's interest is not necessarily furthered by knowledge of the defendant's specific identity" particularly where the allegations involve "highly embarrassing and potentially sensitive and personal" matters. *Malibu Media, LLC v. Doe*, No. 15 Civ. 2624, 2015 WL 6116620, at *5 (S.D.N.Y. Oct. 16, 2015) (collecting cases). Courts have also found a lower public interest in disclosure where there exists a "risk of misidentification" because "a defendant is only identified by an IP address." *Malibu Media*, 2015 WL 6116620, at *5. Both concerns are relevant here.

Those courts granted anonymity even though they found the underlying activity—downloading adult films—carried little independent First Amendment value. What they protected was privacy against embarrassment and disclosure of sensitive information.



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

Doe's interest is that, plus a constitutional interest in anonymous religious criticism, plus a showing of likely retaliatory harm.

The public interest, in fact, runs the other way. It is well established that the First Amendment protects the right to anonymous speech. *Antonyuk v. James*, 120 F.4th 941, 1003 (2d Cir. 2024). Without privacy in identity, those with unpopular or dissenting views—like Doe—cannot speak freely. *See Talley v. California*, 362 U.S. 60, 64 (1960) ("Persecuted groups and sects…throughout history have been able to criticize oppressive practices and laws either anonymously or not at all."). Unmasking Doe would signal to this religious community that anonymously questioning the organization's own publications may lead to identification and retaliation.

This factor therefore counsels in favor of Doe's proposed protective order.

**9. The Ninth *Sealed Plaintiff* factor is neutral or, at most, modestly favors protecting Doe's identity.**

The ninth factor asks whether, "because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190. Doe does not contend that a future infringement action would present purely legal issues; factual questions may matter. But Doe's particular legal name has little bearing on the public's ability to understand the factual and legal questions that arise from a copyright infringement case or evaluate the Court's resolution of them. This factor therefore does not materially alter the balance.

**10. An AEO protective order is the narrowly tailored mechanism for protecting Doe's confidentiality.**

The tenth factor asks whether there are alternative mechanisms for protecting Doe's confidentiality. Here, the Court has already identified the relevant mechanism: a protective order. The Court concluded that allowing Doe to proceed anonymously in this miscellaneous proceeding "would do little for Doe's privacy interests," but explained that a protective order "could preserve Doe's anonymity in a subsequent infringement claim." Order 25–26.

The remaining question is what form that protection must take. Ordinary sealing or a conventional confidentiality designation would prevent disclosure to the public but would not prevent disclosure to Watch Tower itself—the disclosure that gives rise to Doe's principal asserted harm. An AEO designation addresses that concern while still permitting Watch Tower to fully pursue its claims.

***

Taken together, the balance of the *Sealed Plaintiff* factors favors the narrowly tailored protection Doe requests. The large majority of the factors weigh in favor of Doe's proposed protective order, including the sensitive nature of Doe's religious beliefs, the risk and



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org

severity of harm from disclosure, Doe's particular vulnerability, Doe's consistent preservation of confidentiality, the limited public interest in Doe's specific identity, and the availability of AEO designation to protect Doe while mitigating any prejudice to Watch Tower. Although the fifth factor nominally weighs against Doe and the ninth is neutral, neither strongly counsels against the relief requested.

Doe's proposed protective order accommodates Watch Tower's legitimate litigation interests while preventing disclosure beyond those who presently need Doe's identity. For the foregoing reasons, the Court should enter Doe's proposed AEO protective order, attached as Exhibit 1.

We thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ Elizabeth Femia*

Elizabeth Femia
*Attorney for J. Doe*

cc: All Counsel (via ECF)



815 EDDY STREET, SAN FRANCISCO, CA 94109 USA phone +1.415.436.9333 fax +1.415.436.9993 eff.org