MBJN LAW

925 Cripple Creek Drive, Suite 400
Lawrenceville, Georgia 30043
Phone: 678-439-7550 Fax: 678-426-9177
E-Mail: mjnoel@mbjnlaw.com

**VIA ECF**

August 18, 2026

The Honorable Kenneth M. Karas
United States District Court
Southern District of New York
Charles L. Brieant Jr.
United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: *In re: DMCA Section 512(h) Subpoena to Cloudflare, Inc.*, Case number 7:25-mc-00555-KMK (S.D.N.Y.)

Dear Judge Karas,

Watch Tower initiated this legal process in pursuit of information to identify the individual infringing its copyrights. It did so with no regard to the infringer's religion or beliefs. Without being prompted by Watch Tower or the Court, Doe voluntarily disclosed his religious affiliation. Declaration of J. Doe in Support of Motion to Quash Subpoena to Cloudflare, Inc. Seeking Identity, D.E. 30 ("Doe Decl.") at ¶ 2. Doe now attempts to use that unsolicited disclosure to conceal his identity from both Watch Tower and the public. Neither request is supported by the law, especially in this case where any legitimate privacy interests can be resolved by less extraordinary alternative measures such as sealing and redacting.

Importantly, the harm from which Doe seeks the protection of an Attorney's Eyes Only ("AEO") designation is a harm Watch Tower has no ability to inflict. Watch Tower does not make ecclesiastical decisions or remove individuals from their local congregation of Jehovah's Witnesses. Order, at 3. Accordingly, contrary to Doe's baseless assertion, any alleged harm does not "flow from disclosure to Watch Tower." Doe Letter dated August 11, 2026, D.E. 46 ("Doe Letter") at 4.

### ***I. The Relevant Question Is Public Disclosure, Not Whether Doe's Identity Should be Concealed from Watch Tower***

After denying Doe's motion to quash, the Court stated that its ruling did not require Doe's identity to be "publicly revealed" upon Cloudflare's compliance with the subpoena. Order at 25. The Court therefore directed the parties to meet and confer regarding a protective order protecting Doe's identity from "public disclosure." Order at 27. The Court directed Doe to file a letter addressing the *Sealed Plaintiff* factors if no agreement could be reached between the parties. *Id*.

The Court's instruction to address the *Sealed Plaintiff* factors is consistent with its direction to meet and confer regarding "public disclosure," because "[t]he primary thrust of *Sealed Plaintiff* and its progeny is public disclosure." *Benitez* v. *U.S. Dep't of Homeland Sec*., No. 2:26-CV-2082-SJB, 2026 WL 1362431, at *4 (E.D.N.Y. May 15, 2026); *see also Sealed Plaintiff* v. *Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008). Watch Tower, as a party to this litigation, is not "the public." *See Benitez*, 2026 WL 1362431, at *3 (distinguishing between concealment from the public and concealment from the defendant, stating "Plaintiffs' motions … are best understood as

requesting … distinct types of relief: concealing Plaintiffs from the public [and] concealing Plaintiffs from the [Defendant]").

### *(a) The Sealed Plaintiff Factors Concern "Public Disclosure", Not Disclosure to a Party*

Nevertheless, both during the meet-and-confer process and in his letter, Doe has taken the "non-negotiable" position that any protective order must prevent disclosure of his identity to Watch Tower through an AEO designation. In his letter, he relies on *Benitez* to support his position that there is precedent for using the *Sealed Plaintiff* factors to analyze the issue of preventing disclosure of a party's identity to an opposing party, but that is a complete misreading of *Benitez*. To the contrary, the court there expressed doubt that the *Sealed Plaintiff* factors could be used to conceal the identity of one party from another. *See Benitez*, 2026 WL 1362431, at *4 ("what is less clear . . . is whether *Sealed Plaintiff* allows the Court to conceal the identities of Plaintiffs and the Non-Party Declarants from *Defendants*.") (emphasis in original). The court in *Benitez* did not use the *Sealed Plaintiff* factors to conceal one party's identity from another, and Doe has pointed to no other case in which a Court has done so.

Doe's proposed AEO designation would, in an unprecedented manner, improperly treat Watch Tower as though it were a member of the public. It would also severely limit Watch Tower's ability to, among other things, determine who operated the website containing its copyrighted material, evaluate issues related to personal jurisdiction, interview witnesses, assess service issues, and prosecute its claims. Doe's request for an AEO designation should be rejected as a non-starter.

### *(b) The Kolko Case Further Illustrate Why an AEO Designation is Not Appropriate Here*

The *Doe No. 2* v. *Kolko* decision relied on heavily by Doe illustrates why an AEO designation is entirely out of bounds here. 242 F.R.D. 193 (E.D.N.Y. 2006). In that case, Doe No. 2 alleged that he was sexually abused by Rabbi Kolko as a child and filed suit against the rabbi and the Yeshiva that allegedly concealed the abuse. 242 F.R.D. at 194. "[A]n official of the Yeshiva warned family members of victims of Rabbi Kolko that if they pursued claims, they would be shunned by the Orthodox Jewish community and their other children would be expelled from the Yeshiva and prevented from attending other yeshivas in the New York area." *Id.* at 197. And "one anonymous accuser of Rabbi Kolko [ ] received threats including, 'We're gonna get your family.'" *Id.* Yet even there, the court required disclosure of plaintiff's identity to both defense counsel *and the defendants*. *Id*. at 195.

### *(c) Reddit Provides No Support for Concealing Doe's Identity from Watch Tower*

Doe's reliance on *In re DMCA Subpoena to Reddit, Inc*., 383 F. Supp. 3d 900 (N.D. Cal. 2019) ("*Reddit-1*") is likewise misplaced. First, while the magistrate in *Reddit-1* did propose disclosure under an AEO designation, the district court never adopted that approach. *See In re DMCA Subpoena to Reddit, Inc.,* 441 F. Supp. 3d 875, 877-78 (N.D. Cal. 2020) ("*Reddit-2*") ("[the magistrate's] decision is a non-final report and recommendation …the Court declines to adopt the recommendation").

Second, in the *Reddit* cases, the dispositive issue was whether the First Amendment, by way of the Fair Use doctrine, prohibited disclosure of Doe's identity to Watch Tower. The court in *Reddit-2* granted the motion to quash on that ground. Here, that question is no longer open. This Court has already determined, after conducting the requisite balancing, that disclosure of Doe's identity is not prohibited by the First Amendment. That is a fundamental distinction. Unlike *Reddit-2*, where the court was deciding whether Watch Tower was entitled to learn Doe's identity at all, the only issue remaining here is whether Doe may proceed anonymously in public filings despite the fact that disclosure to Watch Tower has already been authorized.

Third, while the magistrate in *Reddit-1* tried to create a remedy based on the user's arguments that disclosure could lead to shunning or disfellowshipping within the Jehovah's Witness community, the district court judge expressly rejected that recommendation, stating that such concerns "play[ed] no role" in the analysis and that the "potential sanctions of shunning and disfellowship[ing]" were a "non-event" for purposes of the decision because it recognized that Jehovah's Witnesses are "free to organize [their] internal disciplinary practices as [they see] fit, without interference from the courts." *Id.* at 887 (citing *Paul* v. *Watchtower Bible & Tract Society of New York, Inc*., 819 F.2d 875, 879-80 (9th Cir. 1987)).

## *II. Doe's Fear of Religious Discipline Cannot Justify State Action Withholding his Identity from Watch Tower or the Public*

Like the court in *Reddit-2*, this Court should refuse to consider Doe's claim that he fears shunning or disfellowshipping and should expressly find that those concerns can "play no role" in its decision-making. *Id.* at 887.

### *(a) Religious Discipline Is Constitutionally Protected Religious Conduct*

Jehovah's Witnesses' religious disciplinary practices include removal of individuals from a congregation, which results in the severance of *spiritual* ties with those individuals. *See* Affidavit of Aaron Purvis attached hereto as Exhibit 1 ("Purvis Affidavit") ¶ 22. It is also a practice protected under the First Amendment. *See e.g., Paul*, 819 F.2d at 883-84. This religious disciplinary process is the "retaliation" that Doe states he "reasonably fears." *See* Doe Letter at 1. (citing Doe Decl.) ("Doe reasonably fears that such disclosure will lead the Jehovah's Witnesses organization to retaliate against Doe…"). Specifically, in his declaration, Doe states that, in "my experience, people who voice their disagreements or doubts ultimately face rejection and disapproval from other members of the Jehovah's Witness community," they "may be labelled 'apostates' and be excommunicated or 'disfellowshipped' from the community." *See* Doe Decl. at ¶ 2.

### *(b) Granting Relief Based on the Prospect of Religious Discipline Would Impermissibly Treat Protected Religious Conduct as a Legally Cognizable Injury in Need of a Remedy*

Prohibiting Watch Tower's access to otherwise discoverable information because disclosure might lead to religious discipline would necessarily be (1) treating protected religious

conduct as a legally cognizable injury and (2) tailoring relief to prevent it – something no court may do without running afoul of the long line of cases holding that "expulsion from a religious society, with the exclusion from a religious community, is not a harm for which courts can grant a remedy." *Eglise Baptiste Bethanie de Ft. Lauderdale, Inc.* v. *Seminole Tribe of Fla*., No. 19-CV-62591, 2020 WL 43221, at *10 (S.D. Fla. Jan. 3, 2020), aff'd, 824 F. App'x 680 (11th Cir. 2020) (emphasis added).

Recognizing that removal from a religious community is not a legally cognizable harm for which courts may grant a remedy does not deny that an individual may experience that removal negatively– even though that is not what is intended. *See* Purvis Affidavit ¶¶ 15, 17. Rather, it is an acknowledgement that "'the values underlying these two provisions [of the first amendment] relating to religion have been zealously protected, sometimes even at the expense of others interests.'" *Paul*, 819 F.2d at 883 (quoting *Wisconsin* v. *Yoder*, 406 U.S. 205, 214 (1972)). Specifically, claims of emotional harm are interests that must yield to protected religious practice. *See*, *e.g., Paul*, 819 F.2d at 883 ("We find the practice of shunning not to constitute a sufficient threat to the peace, safety, or morality of the community as to warrant state intervention.").

***(c) Doe's Theory Would Create an Unworkable and Constitutionally Problematic Precedent***

Moreover, recognizing Doe's asserted fear of removal from a congregation as a basis for anonymity would create an unworkable precedent. Under Doe's theory, any member of a religious congregation could seek judicial protection from disclosure by claiming that fellow congregants might react negatively upon learning of the individual's alleged conduct. Courts would then be drawn into assessing the likelihood, severity, and consequences of religious discipline, as well as the internal practices and norms of religious organizations, to determine whether anonymity is warranted. That is precisely the type of inquiry the First Amendment forbids. The problem is especially acute where, as here, the litigation does not arise from any dispute within the congregation itself. Indeed, Doe's position would extend far beyond *Sealed Plaintiff*: It would mean that a litigant accused of fraud, copyright infringement, or virtually any other wrongdoing could proceed anonymously simply by asserting that disclosure might cause members of his church to withdraw social or religious association. Neither *Sealed Plaintiff* nor any other authority supports such an extraordinary result.

The Court should reject Doe's effort to convert an ordinary litigation into an unconstitutional religious inquiry. The First Amendment protects Jehovah's Witnesses' religious discipline, and no court may enter a remedy against it or, as discussed in Section III(a)(2), join Doe in speculating about whether it is likely to occur. Doe's request for anonymity, which is based entirely on his concerns about religious discipline, may be rejected based on the foregoing alone. Analysis of the *Sealed Plaintiff* factors provides an independent basis for denying his request for anonymity.

### *III. Doe – The Party Seeking to Conceal His Identity from the Public Is Seeking Extraordinary Relief and Therefore Has the Burden to Show Entitlement to It*

Federal Rule of Civil Procedure 10(a) requires that "all the parties" be named. That requirement serves the important purpose of promoting public scrutiny of judicial proceedings and "cannot be set aside lightly." *Sealed Plaintiff*, 537 F.3d at 188-89. Accordingly, the Second Circuit has repeatedly emphasized that "[p]seudonyms are the exception and not the rule," and that a litigant seeking anonymity bears the burden of overcoming the strong presumption of disclosure. *United States* v. *Pilcher*, 950 F.3d 39, 45 (2d Cir. 2020); *Grow Universe Inc.* v. *Doe*, No. 1:25-CV-1861-GHW, 2026 WL 412637, at *1 (S.D.N.Y. Feb. 13, 2026).

Consistent with those principles, courts permit anonymity only in exceptional circumstances. *See Doe* v. *Frank*, 951 F.2d 320, 323 (11th Cir. 1992) ("It is the exceptional case in which a plaintiff may proceed under a fictitious name."); *Rapp* v. *Fowler*, 537 F. Supp. 3d 521, 526 (S.D.N.Y. 2021) ("Federal court proceedings and records presumptively are public absent a showing of exceptional circumstances."). Doe cannot make the requisite showing here. Instead, he attempts to repackage ordinary consequences of disclosure in litigation as extraordinary circumstances warranting anonymity. However, the *Sealed Plaintiff* factors, properly applied, overwhelmingly favor disclosure.

#### *(a) The Sealed Plaintiff Factors Weigh Decisively Against Doe*

In considering the *Sealed Plaintiff* factors, "the ultimate question is whether the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe* v. *2001 Arthur LLC*, No. 24-CV-9542-RA, 2026 WL 237513 at *2 (S.D.N.Y. Jan. 29, 2026). Doe's claimed privacy interests, when distilled, are essentially the same interests any defendant has when accused of misconduct: embarrassment or reputational and professional harm. However, courts in this circuit repeatedly hold that those interests are common and do not outweigh the presumption of openness. *See, e.g., Grow Universe Inc.*, 2026 WL 412637, at *3 ("Even accepting Movant's contention that these allegations could be embarrassing or reputationally harmful, they are not the type …that courts have found to favor anonymity.").

##### *(1) Factor One Favors Disclosure Because This Case Does Not Involve Matters of the Type Courts Deem "Highly Sensitive and Personal"*

Doe argues that his religious beliefs are "highly sensitive and [a] personal matter" such that the first *Sealed Plaintiff* factor favors anonymity. Doe Letter at 3. The case law does not support his position. Courts in this Circuit routinely decline to find the first factor weighs in favor of anonymity merely because a litigant's religious beliefs would be exposed. *See, e.g.*, *Doe* v. *Intel Corp.*, 786 F. Supp. 3d 576, 579 (S.D.N.Y. 2024) (plaintiff alleged "discrimination and retaliation based on [among other factors] religion" but "the Court does not view the first factor as independently weighing in favor of anonymity."); *Doe* v. *Fashion Institute of Technology*, No. 25-CV-950-JPC, 2025 WL 1000927, at *3 (S.D.N.Y. Apr. 3, 2025) (same).

The cases cited by Doe where the court relied on religion to satisfy factor one of the *Sealed Plaintiff* analyses are inapposite. They involved disclosure of religious affiliation plus another element – the defendants in those cases were all governmental entities. The combination of disclosure of religious affiliation where the opposing party was a governmental entity is what tipped those cases into satisfying the first *Sealed Plaintiff* factor. *See* Doe Letter at 3 (citing *Doe* v. *Stegall,* 653 F.2d 180 (5th Cir. 1981) (defendant was a public school); *Doe* v. *City Univ. of New York*, No. 21-CV-9544-NRB, 2021 WL 5644642, at *1 (S.D.N.Y. Dec. 1, 2021) (defendant was a public university); *Doe* v. *Porter,* 370 F.3d 558 (6th Cir. 2004) (defendant was the board of education); *Doe* v. *Hochul*, No. 21-CV-5067, 2022 WL 836990 (E.D.N.Y. May 18, 2022) (defendant was the governor)). Underscoring the point, one of those cases, *Doe v. Hochul,* relied on *Air Force Officer* v. *Austin*, which explicitly explained the importance of the additional element of governmental involvement, stating:

> the Court has previously recognized that religion is perhaps a quintessentially private matter and in doing so, it respected the fact that a plaintiff should be allowed to proceed anonymously in a case <u>against the government if religion is on the table</u>.

2022 WL 836990, at *5 (emphasis added).

This case is not against the government. Rather, this case falls squarely outside of the type of cases that qualify as highly sensitive and personal under the first S*ealed Plaintiff* factor. For "[t]he first *Sealed Plaintiff* factor…[c]ases related to birth control, abortion, homosexuality, welfare rights of illegitimate children, abandoned families, allegations of sexual assault, and allegations linking parties to pornography are highly sensitive and of a personal nature. By contrast, allegations that carry 'the potential for embarrassment or public humiliation do[ ] not, without more, justify a request for anonymity.'" *Grow Universe Inc.*, 2026 WL 412637, at *3 (citations omitted).

That is exactly what Doe alleges here. His claimed harms are rejection, social exclusion, and possible disfellowshipping within the Jehovah's Witness community. *See* Doe Decl. ¶¶ 2, 17. Courts have consistently held that claims like these, which are essentially embarrassment and public humiliation, do not satisfy the first *Sealed Plaintiff* factor. *Grow Universe Inc.*, 2026 WL 412637, at *3; *see also Doe* v. *Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) ("Further, 'the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity.'"). Accordingly, the first factor does not favor anonymity here. *See Skyline Automobiles, Inc.*, 375 F. Supp. 3d at 405-06 ("These allegations are highly sensitive and of an extremely personal nature to the Plaintiff. However, the first factor itself is not dispositive, and the other factors must be taken into consideration and analyzed in comparison to the public's interest and the interests of the opposing parties."); *Doe* v. *Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (denying anonymity despite concluding that "[i]f the allegations of the complaint are true, plaintiff was the victim of a brutal sexual assault" and "has very legitimate privacy concerns").

***(2) Factor Two Favors Disclosure Because Doe Identifies Only Speculative Emotional Harm***

The second *Sealed Plaintiff* factor asks "whether identification poses a risk of retaliatory physical or mental harm to the ... party seeking to proceed anonymously . . . ." *Sealed Plaintiff*, 537 F.3d at 190.

Doe alleges that his "physical and mental wellbeing would suffer" because he stands to be "'disfellowshipped' and lose most of [his] significant personal relationships, including friends, family, and coworkers." *See* Doe Letter at 4. Thus, his claim of "retaliatory physical and mental" harm rests principally on the premise that disclosure of his identity would subject him to religious discipline resulting in these attendant social consequences. Doe contends that this risk is not "speculative" because "'disfellowshipping' is a genuine, common practice in the Jehovah's Witness community." *See* Doe Letter at 4.

***(i) Risk or Likelihood of Disfellowshipping: Doe Has Provided No Evidence and The Court May Not Decide the Issue***

Whether this religious discipline exists in the Jehovah's Witness faith is not the relevant question. Rather, the relevant question is whether Doe has demonstrated that disclosure of his identity is likely to subject him to the type of substantial harm that satisfies this factor. *Doe* v. *Del Rio*, 241 F.R.D. 154, 162 (S.D.N.Y. 2006) (plaintiffs failed to show a sufficient likelihood of harm to overcome the presumption of openness). Although Doe states that he knows others who have been removed from the congregation, he offers no evidence establishing a particularized likelihood that any disciplinary action would be taken against *him*, much less that any such action would constitute the type of exceptional circumstance that overcomes the strong presumption of open judicial proceedings.[1] His failure to offer evidence of this type of event is fatal here because this factor requires evidence of a personalized risk, not merely evidence that the alleged consequence exists in general. *See, e.g., Doe* v. *Townes*, 19-CV-8034-ALC, 2020 WL 2395159, at *4 (S.D.N.Y. May 12, 2020) ("A risk of retaliation may be found where there is a history of substantiated prior action directed at plaintiff(s) from defendant(s).").

The materials attached to the Declaration of Elizabeth Femia in Support of Motion to Quash Subpoena, D.E. 31 ("Femia Decl.") provide no proof that *Doe* would be disfellowshipped if his identity were made public. Equally as important is the fact that the materials attached to her declaration about disfellowshipping are outdated, inaccurate, and unverified. *Compare* Affidavit of Aaron Purvis, attached as Exhibit 1, *with* Femia Decl.[2]

---

[1] As discussed above, even if he could show this risk, he still should not be permitted to proceed anonymously because the Court cannot enter a remedy for the purpose of protecting him from religious discipline. *See* Section II.

[2] The materials attached to Ms. Femia's declaration pre-date significant changes in the Jehovah's Witnesses' policy and procedure for removing an individual from a congregation and how removed individuals should be treated, which were released in the August 2024 edition of *The Watchtower Announcing Jehovah's Kingdom*. For example, The Rosie Luther study was published in 2023. The Leanardo Blair article is dated February 20, 2018. The Fern Schumer Chapman article was published on March 27, 2024.

More fundamentally, whether Doe would actually face such religious discipline is itself a religious question that civil courts may not answer. *Serbian E. Orthodox Diocese for U.S. of Am. and Can.* v. *Milivojevich*, 426 U.S. 696, 713 (1976) ("religious controversies are not the proper subject of civil court inquiry"); *Paul*, 819 F.2d at 883. Doe does not claim that anyone with authority in the Jehovah's Witness faith has told him he would be removed from the congregation based on the circumstances here. And the Court cannot evaluate those circumstances through the lens of Jehovah's Witnesses' interpretation of the Bible in order to determine whether religious discipline is likely. *Compare Kolko*, 242 F.R.D. at 197 (concrete and clear evidence where "an official of the Yeshiva warned family members of victims of Rabbi Kolko that if they pursued claims, they would be shunned by the Orthodox Jewish community . . . .")

Indeed, even Jehovah's Witnesses cannot determine, based solely on a person's conduct, whether that person may be removed from the congregation. Their religious discipline decisions are made through a religious process that considers numerous factors. *See* Purvis Affidavit ¶ 19. The outcome is not determined solely by the underlying conduct. *Id.* As a result, "it is not possible to reliably predict that a particular individual will be removed from the congregation based solely on a limited description of conduct or circumstances." *Id.*

***(ii) There is No Retaliation for Protected Conduct***

Doe conflates retaliation with consequences. The possibility that members of a religious community may alter their relationship with Doe after learning of his conduct is not remotely comparable to threats against children, exclusion from educational institutions, or threats of violence that courts have found to be retaliation. *See e.g. Kolko*, 242 F.R.D. at 197. For example, in *Kolko*, where the court necessarily found there was retaliation, it was because the plaintiff engaged in protected conduct – reporting child sex abuse against a Rabbi and pursuing legal claims against both the rabbi and the Yeshiva that concealed the abuse. *Id.* at 194. The alleged reprisals were direct responses to that protected activity. *Id.* at 197 (threats directed at "family members of victims of Rabbi Kolko that if they pursued claims . . . ."). Here, by contrast, Doe identifies no comparable threat and no legally cognizable retaliatory harm. Instead, he seeks protection from possible religious consequences arising from his own conduct.

***(iii) Doe Has Provided No Evidence of Physical or Mental Harm***

Further, even assuming Doe could demonstrate a sufficient risk of disfellowshipping, he still has not made a sufficient showing, as required by the second *Sealed Plaintiff* factor, that public identification would cause him psychological or physical harm. Doe relies on the *Kolko* decision, noting that the court there credited "emotional and psychological harm…in light of [ ] ties to a very tight-knit religious community." 242 F.R.D. at 197. But the court specifically found that the plaintiff's submissions were "sufficiently particularized and specific to establish a serious risk of harm to plaintiff's mental health." *Id.* at 196. In reaching that conclusion, the court relied on the opinion of the plaintiff's psychologist, who stated that "'any public disclosure of plaintiff's identity would be severely damaging to his already fragile psychological condition.'" *Id.*

Here, by contrast, Doe has made no comparable showing. Unlike the plaintiff in *Kolko*, Doe provides no expert opinion, medical documentation, or other corroborating evidence supporting his assertion that public disclosure would cause psychological harm. *See, e.g., Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406 ("some courts have suggested that a plaintiff should submit medical documentation to support the alleged harm they will suffer if they were not permitted to proceed anonymously"); *Grow Universe*, 2026 WL 412637, at *3 (quoting *Doe* v. *Alexander*, No. 25 Civ. 2077, 2025 WL 1637941, at *3 (S.D.N.Y. June 9, 2025)) ("mere speculation about a risk of psychological injury" is insufficient).

At best, Doe's claimed harm amounts to nothing more than fear of embarrassment, loss of professional contacts, and loss of social relationships. Courts repeatedly hold that "claims of public humiliation and embarrassment are generally not sufficient grounds" for pseudonymous litigation under the second *Sealed Plaintiff* factor either. *Grow Universe*, 2026 WL 412637, at *3 (quoting *Doe* v. *Delta Airlines, Inc.*, 310 F.R.D. 222, 226 (S.D.N.Y. 2015)). Likewise, "[e]vidence of embarrassment, social stigmatization, and economic harm are insufficient to proceed anonymously." *Townes*, 2020 WL 2395159 at *4.

Accordingly, Doe has not satisfied the second *Sealed Plaintiff* factor. He has not established a concrete, particularized risk that public disclosure would subject him to religious discipline; the Court may not resolve the ecclesiastical question necessary to determine whether such discipline would occur in any event; and Doe has provided no evidence beyond his own speculation that disclosure would cause him psychological injury.

***(3) Factor Three Favors Disclosure Because Doe Identifies No Other Harms that Merit Protection from Public Disclosure***

For the third factor, courts consider "whether identification presents other harms and the likely severity of those harms including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity . . . ." *Sealed Plaintiff*, 537 F.3d at 190 (internal quotations omitted).

Doe has identified two "other harms." The first is "professional ostracism" and that his "speech 'will be chilled.'" *See* Doe Letter at 5. Courts are clear that anonymity cannot be granted to protect professional standing. *Abdel-Razeq* v. *Alvarez & Marsal, Inc.,* No. 14 CIV. 5601 HBP, 2015 WL 7017431, at *4 (S.D.N.Y. Nov. 12, 2015) (finding against party seeking anonymity who argued financial hardship and loss of professional goodwill).

The second is that his "speech 'will be chilled.'" *See* Doe Letter at 5. Whether his or others' speech would be chilled is a First Amendment consideration. In the context of copyright infringement, First Amendment considerations are addressed through the fair use analysis. *See Reddit-2.*, 441 F. Supp. 3d at 882. This Court, however, has already found against Doe on the issue of fair use. *See* Order at 25. In copyright infringement cases, the facts relevant to a fair-use defense are squarely within the alleged infringer's possession, and specifically in this case, any evidentiary gaps regarding fair use were held against Watch Tower, not Doe. *See e.g.* Order at 25 ("the fourth factor tips somewhat in Doe's favor because although Doe's archive might have served as a substitute for Petitioner's works, Petitioner has not indicated what economic injuries that might

cause them."); *see also* Order at 14-15 ("Doe represents that neither use is commercial because Doe "never made any money in connection with the archive and tools" and never "sought to do so." Petitioner responds that "[w]ithout Doe's identity and an opportunity for discovery," however, "it is impossible to truly discern the full extent and nature of Doe's use of Watch Tower's works.". . . "because . . . the Court does not see on this record how Doe "stands to profit," it finds the uses are noncommercial.") (citations omitted).

If Doe is unsatisfied with this Court's consideration of the "chilling effect" on his and others' speech, he is free to appeal the Court's Order because in the context of a DMCA subpoena, a ruling on the motion to quash is an appealable final order. *See Reddit-2.*, 441 F. Supp. 3d at 880 (finding that in the DMCA subpoena context, "the motion to quash is dispositive of the sole issue presented in the case...Once that question is answered, the dispute between the parties is fully decided.").

Because "professional" ostracism does not satisfy the second *Sealed Plaintiff* factor and the First Amendment issue has already been decided against him, this *Sealed Plaintiff* factor weighs in favor of disclosure.

***(4) Doe Is Not "Particularly Vulnerable" Within the Meaning of Sealed Plaintiff***

The fourth *Sealed Plaintiff* factor asks whether the party seeking anonymity is "particularly vulnerable to the possible harms of disclosure," especially in light of age or similar personal circumstances. *Sealed Plaintiff*, 537 F.3d at 190. This factor does not favor Doe.

Courts have generally applied this factor to minors, victims of extraordinary circumstances, or individuals whose age, health, or personal condition renders them uniquely unable to protect their interests. *See Doe* v. *Alexander*, No. 25-CV-2107 (LJL), 2025 WL 1126617, at *3 (S.D.N.Y. Apr. 16, 2025) ("courts have been readier to protect the privacy interest of minors in legal proceedings than of adults"); *James* v. *Jacobson*, 6 F.3d 233, 241 (4th Cir. 1993) (focusing on the welfare of vulnerable pre-adolescent children).

Doe identifies no such circumstance. Under Doe's theory, any adult litigant could claim "particular vulnerability" by asserting that friends, family members, coworkers, or members of a religious, social, or professional community may disapprove of the litigant's alleged conduct. The possibility that disclosure may affect relationships within the community does not demonstrate unusual vulnerability; it reflects the ordinary consequences that may follow when an individual's conduct becomes known to others who hold differing views. This factor also weighs in favor of disclosure.

***(5) Factor Five Strongly Favors Disclosure Because This Case Involves Private Parties***

The fifth *Sealed Plaintiff* factor asks "whether the suit is challenging the actions of the government or that of private parties." *Sealed Plaintiff*, 537 F.3d at 190. This case involves no challenge to governmental action, constitutional claim against the State, or attack on public policy.

It is a private copyright dispute between private parties concerning the conduct of a specific individual. Accordingly, this factor weighs against anonymity.

Doe argues that the factor is entitled to little weight because its primary purpose is to protect private defendants from reputational harm. Courts have rejected such a narrow view. As Judge Woods recently explained, "Private civil suits not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms." *Grow Universe Inc.*, 2026 WL 412637, at *4 (quoting *Del Rio*, 241 F.R.D. at 159). Accordingly, courts are "less likely to grant a motion to proceed anonymously where, as here, the suit involves solely private parties rather than a challenge to governmental action." *Grow Universe Inc.*, 2026 WL 412637, at *4. Indeed, *Grow Universe* concluded that "[b]ecause this dispute is between solely private parties, this factor favors disclosure." *Id.*

It is irrelevant that Doe is a potential defendant rather than a plaintiff. As this Court noted, courts apply the same *Sealed Plaintiff* factors to defendants. *See* Order at 26. Nor is Watch Tower anything other than a private litigant. Watch Tower is a private copyright owner seeking to enforce private rights. Doe misrepresents the *Kolko* decision arguing that a private religious organization should be treated as the equivalent of the government simply because it serves a community function like education. Doe Letter at 6. On this point the *Kolko* court stated,

> Given the significant roles held by these defendants in their community, plaintiff's allegations of sexual abuse of children and the Yeshiva's attempt to conceal such abuse raise concerns affecting a larger association rather than the interest of an individual plaintiff. Additionally, the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.

242 F.R.D. at 195. On the basis of those findings the Court then held, "on balance, I find that this case is more analogous to one involving a governmental defendant where the private concerns are outweighed by the overriding public interest in regulating the conduct at issue." *Id.* at 196. There is no such significant public interest in prohibiting a copyright owner from pursuing legitimate copyright claims – especially when, as here, the Court has already determined that Watch Tower made out a *prima facie* case of copyright infringement. *See* Order at 25.

Because this dispute involves private parties and specific alleged conduct rather than a challenge to governmental action, the fifth *Sealed Plaintiff* factor weighs strongly against anonymity.

***(6) Factor Six Favors Disclosure Because Both Public Anonymity and Concealment from Watch Tower Would Cause Substantial Prejudice***

The sixth factor considers whether the defendant is prejudiced by allowing the plaintiff to press his or her claims anonymously, whether the nature of that prejudice differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court. *Sealed Plaintiff,* 537 F.3d at 190. Allowing Doe to proceed anonymously would create substantial prejudice here.

As courts have recognized, anonymity creates inherent risks of prejudice. *See e.g.*, *Grow Universe, Inc.*, 2026 WL 412637 at *4 ("concealing the name of a party could deprive a litigant and the court of the chance that a yet unknown witness would, upon learning that fact about the case, know to step forward with valuable information about the events or the credibility of witnesses.")(citation omitted); *Del Rio* v. *City of New York*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) (maintaining a plaintiff's anonymity could "unfairly impede defendant's ability to impeach the plaintiffs' credibility" through cross examination and introduction of personal evidence at trial.).

The prejudice is substantially greater here because Doe seeks to conceal his identity not only from the public, but from Watch Tower itself through an AEO designation. Courts have recognized that anonymity can impede discovery even when the opposing party knows the litigant's identity. *See Sebastian* v. *Doe*, No. 25-CV-0911-JAV, 2025 WL 856242, at *3 (S.D.N.Y. Mar. 19, 2025) ("Although defendants know who plaintiff is, concealment of plaintiff's identity from the public can still hamper defendants' ability to conduct discovery.") (citation omitted). If anonymity is prejudicial notwithstanding disclosure to the opposing party, the prejudice is necessarily greater where, as here, the opposing party is denied the information entirely.

An AEO restriction would prevent Watch Tower from conducting even the most basic investigation into Doe. It would impair Watch Tower's ability to investigate jurisdictional facts, locate witnesses, assess commercial use, evaluate defenses and remedies, resolve service issues, and test Doe's credibility. Public anonymity alone creates prejudice; anonymity from the opposing party compounds it. Together, they impose prejudice far beyond that contemplated in the ordinary pseudonymous-litigation case.

If the Court nevertheless permits an AEO designation, the resulting prejudice should be mitigated through corresponding findings that Watch Tower's inability to identify and investigate Doe shall not prejudice it on issues that Doe's concealment places beyond its reach, including: (1) Doe's substantial contacts with the United States; (2) the commercial nature of his use of the infringing material; and (3) his intentional distribution of Watch Tower's copyrighted works with the intent that others further reproduce or distribute them.

Doe's proposed protective order does not mitigate the prejudice to Watch Tower. Instead, it presents serious practical obstacles. For example, Cloudflare does not possess Doe's name. *See In re DMCA Subpoena to Cloudflare*, Case No. 7:25-mc-00555-KMK, Transcript of Hearing Held on February 23, 2026, D.E. 38-1 at 7 ("Mr. Rao: … Cloudflare does not possess Doe's name or billing information on Doe...Cloudflare possesses the zone data, IP log data, and the e-mail address for the relevant account.") As such, Watch Tower must wait until Cloudflare is ordered to comply with the subpoena, then use any information Cloudflare provides to determine the identity of Doe's Internet Service Provider ("ISP"), and then subpoena that ISP for the subscriber information associated with the IP addresses provided by Cloudflare.[3] Doe asserts that his "internet service

[3] In order to obtain Doe's identity, Watch Tower will need to employ the same multi-step process pursued by the plaintiff in *Grow Universe*, 2026 WL 412637, at *1 ("On March 28, 2025, the Court granted Plaintiff leave to serve a third-party subpoena on Google LLC seeking information, including the IP addresses of the devices that accessed Plaintiff's account. Using the information from Google, Plaintiff determined that the IP addresses were associated with the internet service provider Charter Communications, Inc. d/b/a Spectrum ("Spectrum"). On July 14, 2025, the

provider is located outside of the United States." Doe Letter at 2. Watch Tower has no ability to compel a foreign ISP to execute a protective order or agree to submit to the jurisdiction of a U.S. court as required by Doe's proposed protective order. *See* Doe Letter, Exhibit 1 at 3. In many countries, moreover, ISPs are government-owned. Obtaining compliance from a government-owned ISP would implicate the sovereign interests of a foreign nation. Requiring such an entity to consent to the personal jurisdiction of a U.S. court raises issues of international comity that would likely make compliance all but impossible. The result would be to deprive Watch Tower of any meaningful ability to identify Doe and pursue its otherwise valid claims.

***(7) The Confidentiality Interest Relevant to Factor Seven is Minimal or Nonexistent***

The seventh factor considers the extent to which the plaintiff's identity has remained confidential. *Sealed Plaintiff*, 537 F.3d at 190. The confidentiality interest Doe seeks to protect is not anonymity from the public. As Doe repeatedly asserts, "disclosure to Watch Tower itself is Doe's primary concern." Doe Letter at 1. But the Court has already determined that the issue here is "public disclosure," not disclosure to Watch Tower. *See* Order at 27. Having already decided that disclosure of identifying information to Watch Tower is warranted, any incremental harm created by further public disclosure of Doe's identity weighs in favor of public disclosure. *See Doe* v. *Weinstein,* 484 F. Supp. 3d 90, 97 (S.D.N.Y. 2020) ("courts have found less reason to grant such a motion where an allegedly retaliatory defendant knows the plaintiff's identity, which would be the situation here."); *see also Del Rio*, 241 F.R.D. at 157n.7 ("if a plaintiff specifically fears retaliation by defendants or their associates, prior disclosure to the defendants of the plaintiff's identity might moot any request for anonymity.") Accordingly, the confidentiality interest relevant to this factor is either nonexistent or materially diminished. At most, this factor is neutral.

***(8) The Public Interest in Open Proceedings Favors Disclosure Under Factor Eight***

The eighth *Sealed Plaintiff* factor asks whether the public's interest in the litigation is furthered by requiring Movant to disclose his identity. *Sealed Plaintiff*, 537 F.3d at 190. Courts consider

> whether disclosure of the moving party's name would "enhance the public's understanding of the proceedings and the nature of the dispute." In cases concerning the legal consequences of an undisputed event, the identity of the parties is "relatively immaterial." By contrast, where a case "turns on the credibility of parties," "the public has a significant interest in open judicial proceedings and the public's interest in the litigation is furthered by transparency, including exposure of the parties' identities."

*Grow Universe Inc.*, 2026 WL 412637 at *5 (citations omitted).

This case does not concern the legal consequences of an undisputed event. Doe concedes that it does not present purely legal issues and that "factual questions may matter." Doe Letter at

Court granted Plaintiff leave to serve a third-party subpoena on Spectrum to obtain information about the subscriber associated with those IP addresses.") (citations omitted).

8. Credibility, intent, and other factual issues are therefore likely to be central to the litigation. As in *Grow Universe*, disclosure of Doe's identity would "enhance the public's understanding of the proceedings and the nature of the dispute." *Id.* ("In a fact-intensive dispute of this kind, where credibility and intent are likely to be central, disclosure of Movant's name would 'enhance the public's understanding of the proceedings and the nature of the dispute.' ... This factor therefore favors disclosure.") (citations omitted).

In his consideration of the eighth factor, Doe cites to *Malibu Media, LLC* v. *Doe*, No. 15-CV-2624, 2015 WL 6116620 (S.D.N.Y. Oct. 16, 2015) for the proposition that "Courts have also found a lower public interest in disclosure where there exists a "risk of misidentification" because "a defendant is only identified by an IP address." Doe Letter at 7. Those concerns are absent here. Unlike cases in which an IP address is the sole identifying information, Doe has already provided numerous identifying facts that can be cross-referenced against any name ultimately obtained by Watch Tower. For example, Doe has represented that he is one of Jehovah's Witnesses, and that he has workmates and family members who are also Jehovah's Witnesses, in addition to other identifying information. *See* Doe Decl. at ¶ 2. Moreover, Doe has acknowledged that the subpoenaed information is likely sufficient to identify him. *See* Doe Decl. ¶ 17 ("Watch Tower will likely be able to use information they receive from CloudFlare to identify me because the Jehovah's Witnesses have collected lots of information about me …over the course of my life in the community.").

Doe's current assertion that there is a "risk of misidentification" is difficult to reconcile with that prior representation. *Compare* Doe Letter at 7 *with* Doe Decl. at ¶ 17. On this record, the likelihood that an innocent third party would be mistakenly identified appears minimal.[4]

***(9) Because This Case Turns on Doe's Conduct Rather Than Abstract Legal Questions, Factor Nine Favors Disclosure***

The ninth *Sealed Plaintiff* factor—whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities—also weighs against anonymity. *Sealed Plaintiff*, 537 F.3d at 190. "Where individual defendants are sued based not on abstract challenges to public policies but rather with regard to particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication." *Grow Universe Inc.*, 2026 WL 412637 at *5. The public's interest is not "atypically weak" where the "allegations are decidedly factual in nature." *Id.* at *5.

Here, the particular actions of Doe are at issue – not public policies. Doe also concedes that a future infringement action would not present purely legal issues and that "factual questions may matter." Doe Letter at 8. Because the issues presented are not purely legal and instead turn on alleged actions and incidents, the public interest in knowing the parties' identities is not "atypically weak." Therefore, this factor does not support permitting Doe to proceed anonymously. *Id.* at *5.

[4] Doe again raises First Amendment issues, but the eighth *Sealed Plaintiff* factor cannot be used to repackage a First Amendment objection the Court has already rejected.

***(10) The Availability of Less Restrictive Alternatives Weighs Against Anonymity Under Factor Ten***

The tenth factor evaluates "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 190. If a viable alternative to complete anonymity exists, this factor weighs against a finding for anonymity. *See Doe* v. *United States*, 16-CV-7256, 2017 WL 2389701, at *2 (S.D.N.Y. June 1, 2017) (determining that it would be inappropriate for the plaintiff to proceed under a pseudonym where alternative measures could be taken to protect his privacy interest).

Sealing or redacting certain documents is routinely done in cases involving sensitive matters. *Anonymous* v. *Medco Health Sols., Inc.*, 588 F. App'x 34, 35 (2d Cir. 2014) (rejecting the assertion that a plaintiff's medical condition and its economic effect on career prospects justified the plaintiff's request to proceed under a pseudonym); *see Skyline Auto*., 375 F. Supp. 3d at 408 (citing *Doe* v. *United States*, 2017 WL 2389701, at *2) ("There are multiple other ways a plaintiff's interests can be protected, including the redaction of documents and sealing.").

Those alternatives are particularly appropriate here because the information Doe seeks to protect is not inherent in the copyright dispute itself. There are two distinct categories of online activity at issue. *See* Order at 3 ("Doe 'created an archive of publications by Watch Tower'"). The archive made Watch Tower's copyrighted works "available on Doe's website in its entirety for all to read," and is the subject of Watch Tower's subpoena and anticipated copyright claims. *Id.* at 17. Nothing about the archive itself communicated Doe's religious beliefs, religious affiliation, or views concerning Jehovah's Witnesses. Second, there are Doe's separate posts on the Reddit "r/ex/jw" forum, which are not the conduct giving rise to Watch Tower's copyright claims. *See* Doe Letter at 4.

This distinction matters because Doe's asserted privacy interest arises not from the copyright infringement itself but from the possibility that aspects of separate online activity could reveal his religious affiliation or personal views. To the extent that concern is legitimate, it can be addressed through narrowly tailored measures. For example, Doe remains free to refrain from placing his religious beliefs, congregational status, or personal experiences at issue in the litigation. Alternatively, any references in court filings that could unnecessarily reveal such information, including references to the specific forum in which Doe posted, may be addressed through targeted redactions or requests to seal particular documents.

In short, concealing Doe's identity from the public is a blunt instrument where more tailored alternatives, such as sealing and redaction, are readily available. *See, e.g., Doe* v. *Cornell Univ.*, No. 19-CV-1189, 2021 WL 6128738, at *9 (N.D.N.Y. Jan. 28, 2021), *aff'd*, 2021 WL 6128807 (N.D.N.Y. Sept. 22, 2021). The abundance of alternative, less extreme, mechanisms to guard any private information weighs strongly against Doe's request to proceed under a pseudonym. *Id.* at *9.

***

Doe seeks extraordinary relief unsupported by the Court's Order, the *Sealed Plaintiff* factors, or the authorities on which he relies. The relevant question is whether Doe's identity should be shielded from *public disclosure*, not whether Watch Tower may learn the identity of the person against whom it has made out a *prima facie* case of copyright infringement. The *Sealed Plaintiff* factors overwhelmingly favor disclosure. Because Doe has failed to carry his burden to show exceptional circumstances sufficient to overcome the strong presumption of openness in judicial proceedings, the Court should deny his request for anonymity and reject his proposed AEO designation.

Respectfully submitted,

/s/ Melanie Baptiste-Jean Noel
Melanie Baptiste-Jean Noel, Esq.
*Counsel for Watch Tower Bible and Tract Society of Pennsylvania*

cc : Counsel of Record (via ECF)